Argued and submitted January 28, certain OAR's held valid; certain OAR's held invalid November 23, 1983, reconsideration of denial of attorney fees denied March 2, petition for review denied March 20 (296 Or 638), reconsideration allowed; former opinion adhered to as modified March 7 (67 Or App 270, 677 P2d 725), reconsideration denied April 27, petition for review denied May 22, 1984 (297 Or 227)

## KEMP,
*Petitioner,*

*v.*

## WORKERS' COMPENSATION DEPARTMENT,
*Respondent.*

### (5-1982; CA A24274)

672 P2d 1343

660

David Force, Eugene, argued the cause for petitioner. On the brief were Peter W. McSwain and Malagon & Velure, Eugene.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

This is an original proceeding brought pursuant to ORS 183.400(1), seeking a declaration as to the validity of five rules established by the Workers' Compensation Department. Pursuant to ORS 183.400(1), this court can find a rule invalid only if it finds that it violates the constitution of the State or the United States, exceeds the statutory authority of the agency or was adopted without compliance with the Administrative Procedures Act. ORS ch 183. Review in this court is limited to consideration of the rule, the applicable statutes and constitutions and the documents evidencing compliance with the APA.

■ Petitioner first challenges two aspects of OAR 436-69-201(2).[1] She argues that the portion that states that insurers have the right to require evidence of the efficacy of treatment is invalid. That part appears to be nothing more than a statement that the insurer may require that the

---

[1] OAR 436-69-201(2) provides:

"(a) Frequency and extent of treatment shall not be more than the nature of the injury and the process of a recovery requires. Insurers have the right to require evidence of the efficacy of treatment. The usual range of the utilization of medical services does not exceed 24 office visits by any and all attending physicians in the first 60 days from first date of treatment, and 4 visits a month thereafter. This statement of fact does not constitute authority for an arbitrary limitation of services, but is a guideline to be used concerning requirements of accountability for the services being provided. Physicians requesting reimbursement for visits in excess of this amount must submit upon request a report documenting the need for such services, setting forth a plan of treatment which will state:

"A. The name or description of specific correctable conditions towards which the therapy is directed.

"B. Specific measurable treatment objectives.

"C. Measurement indicators for each objective.

"D. The specific treatment modalities to accomplish the objectives.

"E. The frequency and duration of treatments estimated to accomplish the objectives;

"F. Upon completion of the treatment program, progress notes on the measurement indicatives; and

"G. Measured outcomes at the completion of the treatment plan.

"(b) A reasonable fee is payable for this report. A judgment by the insurer that the report does not set forth sufficient grounds for the frequency of treatment in excess of the standard may be referred by the physician to the Medical Director, who may rule in favor of the physician. If the Medical Director does not so rule, the matter shall be submitted to a committee of the physician's peers for an opinion."

treatment be reasonable and necessary. As such, it is authorized under ORS 656.245. *Wetzel v. Goodwin Brothers,* 50 Or App 101, 108, 622 P2d 750 (1981).

■    Petitioner next alleges that the rule alters the administrative standards established by ORS 656.245 in that it limits the number of office visits a claimant may have to any and all attending physicians. If a claimant exceeds the limit of 24 office visits in the first 60 days and four visits per month thereafter, the physicians involved are required to submit a report documenting the need for such services and setting forth a detailed plan of treatment. If there is "a judgment by the insurer that the report does not set forth sufficient grounds for the frequency of treatment in excess of the standard," the physician may request referral to the Medical Director "who may rule in favor of the physician. If the Medical Director does not so rule, the matter shall be submitted to a committee of the physician's peers for an opinion."

ORS 656.245(1) provides:

"For every compensable injury, the insurer or the self-insured employer shall cause to be provided medical services for conditions resulting from the injury for such period as the nature of the injury or the process of the recovery requires, including such medical services as may be required after a determination of permanent disability. Such medical services shall include medical, surgical, hospital, nursing, ambulances and other related services, and drugs, medicine, crutches and prosthetic appliances, braces and supports and where necessary, physical and rehabilitative services. The duty to provide such medical services continues for the life of the worker."

In *Springfield Education Assn. v. School Dist.,* 290 Or 217, 621 P2d 547 (1980), and *McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979), the Supreme Court defined the authority of an agency to implement a statute by rule. Under *Springfield,* the standard of judicial review of agency rules varies according to the type of term used in the statute:

"1.)   Terms of precise meaning, whether of common or technical parlance, requiring only factfinding by the agency and judicial review for substantial evidence;

"2.)   Inexact terms which require agency interpretation and judicial review for consistency with legislative policy; and

"3.)   Terms of delegation which require legislative policy determination by the agency and judicial review whether that policy is within the delegation." 290 Or at 223.

ORS 656.245(1) is in the third category, because it contains general terms limiting treatment to "such period as the nature of the injury or the process of the recovery requires." That language delegates to the agency the power to determine policy consistent with the delegation and to implement that policy by rulemaking. This court must therefore determine whether the Department's action in adopting OAR 436-69-201(2) was within the power delegated by the legislature.

We find nothing in this or any other statute that authorizes any limitations on the number of treatments that a claimant can receive. If this administrative rule actually permits a limitation of the treatment which a claimant can receive, it is not authorized by the statute. We agree however with the Director's argument that the rule does not limit treatment but merely requires that, if the treatment exceeds the prescribed number of visits, the physician must submit a report justifying further treatment. That is consistent with the legislative policy of requiring medical service to be provided only for the period of time necessary for recovery. OAR 436-69-201(2) is within the Department's delegated authority and is valid.[2]

■  Petitioner next challenges OAR 436-69-301(3),[3] which she concedes is virtually identical to ORS 656.010 and

_____

[2] OAR 436-69-201(2) does not set forth any penalty for violation of this rule, and petitioner does not challenge the general penalty provisions of OAR 436-69-901. We therefore do not address the issue of the validity of imposing any penalty for violation of the rule.

[3] OAR 436-69-301(3) provides:

"Nothing in these rules shall be construed to require a worker who in good faith relies on, or is treated by, prayer or spiritual means by a duly accredited practitioner of a well-recognized church to undergo any medical or surgical treatment. Such worker or his dependents shall not be deprived of any compensation payments to which he would have been entitled if medical or surgical treatment were employed. The insurer may pay for treatment by prayer or spiritual means."

ORS 656.010 provides:

"Nothing in this chapter shall be construed to require a worker who in good faith relies on or is treated by prayer or spiritual means by a duly accredited practitioner of a well-recognized church to undergo any medical or surgical treatment nor shall such worker or his dependents be deprived of any compensation payments to which he would have been entitled if medical or surgical treatment were employed, and the employer or insurance carrier may pay for treatment by prayer or spiritual means."

is therefore clearly authorized by the statute. However, petitioner contends that the provisions of both the statute and the rule which allow claimants to refuse to undergo any medical or surgical treatment without suspension of benefits only when a worker relies "in good faith" on treatment by a "duly accredited" practitioner of a "well-recognized church" violate the First Amendment to the federal Constitution and Article I, sections 2 and 3, of the Oregon Constitution.

Under *State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983), this court must consider the provisions of the Oregon Constitution before determining petitioner's rights under the federal Constitution.[4] Article I, section 2 states: "All men shall be secure in the natural right, to worship Almighty God according to the dictates of their own consciences." Article I, section 3 states: "No law shall in any case whatever control the free exercise, and enjoyment of religeous *[sic]* opinions, or interfere with the rights of conscience." The Oregon Supreme Court has held that the rights granted under these provisions of the Oregon Constitution are "identical in meaning" with the guarantee of religious freedom contained in the First Amendment to the federal Constitution. *City of Portland v. Thornton,* 174 Or 508, 512, 149 P2d 972 (1944), *cert den* 323 US 770 (1945); *Jehovah's Witnesses v. Mullen, et al,* 214 Or 281, 291, 330 P2d 5 (1958), *cert den* 359 US 436 (1959). Therefore, we turn to interpretations of the federal Constitution.

Although the United States Supreme Court has never dealt directly with the issue, it has generally been recognized that an individual has the right to refuse medical treatment on religious grounds. *Holmes v. Silver Cross Hospital of Joliet, Illinois* 340 F Supp 125 (ND Ill 1972); *Winters v. Miller,* 446 F2d 65 (2d Cir 1971); *In Re Osborne,* 294 A2d 372 (DC 1972); *In Re Brooks Estate,* 32 Ill 2d 361, 205 NE2d 435 (1965); *but see Application of President and Directors of Georgetown College,* 331 F2d 1000 (DC Cir 1964). In this case, however, that right is recognized by statute and by administrative rule, but it is accorded without penalty only to those persons who

---

[4] Neither party in this case has argued that the statute and the administrative rule case do not constitute state action. We note that under our recent decision in *Carr v. SAIF,* 65 Or App 110, 670 P2d 1037 (1983), state action is involved at least when, as here, the discriminatory exception is mandated by statute.

can establish that they have a "good faith" belief in treatment by a "duly accredited practitioner" of a "well-recognized church." An individual who is not a member of any church but who has a sincere belief against medical treatment as a matter of religious conviction could be deprived of benefits. Likewise, an individual who is a member of a small, not "well-recognized" church that teaches that medical treatment should not be used could be deprived of benefits. The question in this case, therefore, is not whether benefits can be denied because someone follows a religious belief but whether benefits can be denied to a certain class of persons following religious beliefs and given to another class of persons following identical religious beliefs, the only difference being that the second class are members of a "well-recognized church" having "a duly accredited practitioner." When the issue is viewed in this manner, it is obvious that the rule cannot be sustained.

In *Larson v. Valente,* 456 US 228, 102 S Ct 1673, 72 L Ed 2d 33 (1982), the United States Supreme Court held:
"The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another. * * *" 456 US at 244.

The court further held:
"* * * Free exercise thus can be guaranteed only when legislators—and voters—are required to accord to their own religions the very same treatment given to small, new, or unpopular denominations. * * *" 456 US at 245.
"* * * [W]hen we are presented with a state law granting a denominational preference, our precedents demand that we treat the law as suspect and that we apply strict scrutiny in adjudging its constitutionality." 456 US at 246.

The Supreme Court has also held that laws may not draw a distinction between personally held beliefs and beliefs of an organized religion or between theistic and non-theistic religious beliefs and secular beliefs. *Welsh v. United States,* 398 US 333, 90 S Ct 1792, 26 L Ed 2d 308 (1970). The common denominator of belief "must be the intensity of moral conviction with which a belief is held. * * *" 398 US at 358.

The only justification given by the Department for the rule is: "The agency has a compelling interest in ensuring

that compensation recipients do not malinger by unreasonably refusing rehabilitative treatment under the guise of religious beliefs." The Department gives no reason why that goal could not be met without drawing the suspect distinction between beliefs. OAR 436-69-301(3) cannot survive the strict scrutiny mandated by the Supreme Court for cases which grant a denomination preference or create a preference between religious and non-religious beliefs.

Assuming that a state has the right to condition a right to benefits on a person's undergoing medical treatment in violation of his religious beliefs, a state still may not exempt, as here, some categories of people with religious beliefs, *i.e.,* members of "well-recognized churches" who are being treated by "duly accredited practitioners," and deny benefits to those of less well-recognized churches or to those whose personal conscience without the dictates of a formal religious belief mandate no medical treatment. OAR 436-69-301(3) violates the First Amendment to the United States Constitution and Article I, sections 2 and 3, of the Oregon Constitution and is invalid.

■ Petitioner next challenges OAR 436-69-401(1) and (2) on the ground that they exceed the authority of the Department. OAR 436-69-401 states:

"(1)   A newly selected attending physician shall notify the insurer not later than five (5) days after the date of change of first treatment, using Form 829 (Change of Attending Physician).

"(2)   The patient may have only one attending physician at a time. Treatment by other physicians shall be at the request of the attending physician. Fees for treatment by more than one physician at the same time are payable only when the medical conditions present are related to the treatment of the compensable injury or illness and are sufficiently different that separate medical skills are needed for proper treatment."

This rule is an apparent attempt to enforce the provisions of ORS 656.245(3):

"The worker may choose an attending doctor or physician within the State of Oregon. The worker may choose the initial attending physician and may subsequently change attending physician four times without approval from the director. If the worker thereafter selects another attending physician the

insurer or self-insured employer may require the director's approval of the selection and, if requested, the director shall determine with the advice of one or more physicians, whether the selection by the worker shall be approved."

The inexact terminology of ORS 656.245(3) requires a determination by this court as to whether OAR 436-69-401 is consistent with legislative policy. *Springfield Education Assn. v. School Dist., supra.*

ORS 656.245(3) implies that a claimant can have only one attending physician at a time. OAR 436-69-401(1) and (2) are consistent with that implication. The only additional requirement, that a new attending physician notify the insurer not later than five days after the date of first treatment, is merely one method of enforcing the implied directive of ORS 656.245(3) and is consistent with the legislative policy.[5] OAR 436-69-401(1) and (2) are within the authority of the Department and are valid.

■ Petitioner challenges OAR 436-69-501 on the ground that it exceeds the statutory authority of the agency. OAR 436-69-501[6] basically requires a surgeon to give an insurer

---

[5] Although it could be argued that the third sentence of subsection (2) bars payment for treatment at the same time by a specialist and by the attending physician, the previous sentence specifically states that treatment by other physicians shall be at the request of the attending physician. The clear implication is that insurer/employer must pay for such treatment of other physicians requested by the attending physician.

[6] OAR 436-69-501 provides:

"(1) When the attending surgeon believes elective surgery is needed for occupational injury or illness, the surgeon shall give the insurer actual notice at least five (5) working days prior to the date of the proposed surgery. Notification shall give the medical information that substantiates the need for surgery, and an estimate of the surgical date. The notice of intent to perform surgery must come from the surgeon actually performing the operation and having hospital privilege to perform the operation. Authorization of payment for the performance of major orthopedic or neurological surgery shall be made only to surgeons certified or eligible for certification by a specialty board approved by the American Board of Medical Specialties or Advisory Board for Osteopathic Specialties. Surgeons currently licensed and holding hospital privilege to perform major orthopedic or neurological surgery who do not have these qualifications may request exemption from this rule from the Medical Director. Physicians licensed in the state after the enactment of this rule shall not be exempt.

"(2) When elective major orthopedic or neurological surgery is recommended, the insurer may require an independent consultation with a physician of their *[sic]* choice. A physician performing a second opinion consultation for major orthopedic or neurological surgery shall be certified or eligible for certification by a specialty board approved by the American Board of Medical Specialties or Advisory Board for Osteopathic Specialties, in fields related to the surgery to be performed.

actual notice at least five working days before the date of proposed surgery. It also gives the insurer the right to require an independent consultation with a physician of its choice, and it allows for a third opinion to be sought if there is disagreement between the first two physicians. Finally, the rule provides that a physician who performs elective surgery without providing the insurer with prior notification and a reasonable opportunity for securing a consultation in advance of the surgery shall be subject to penalties. OAR 436-69-901 lists the penalties for violation of OAR 436-69-501, which are enforced by the director of the Workers' Compensation Department:

> "(a)  Reprimand by the director;
> "(b)  Nonpayment or recovery of fees in part, or whole, for services rendered;
> "(c)  Referral to the appropriate licensing board; or
> "(d)  Civil penalty not to exceed $1,000 for each occurrence."

No specific authority for these rules is contained in the statute. Rather, ORS 656.245 merely states that a claimant shall be

> "* * * provided medical services for conditions resulting from the injury for such period as the nature of the injury or the process of the recovery requires * * *. Such medical services shall include medical, surgical, hospital * * *."

---

"(3) Upon receipt of the consultant's report, the insurer shall promptly notify the physician whether payment will be made for the proposed surgery. If the surgeon and the consultant disagree about the need for surgery, another opinion shall be sought from a consultant mutually agreeable to the two physicians.

"(4) A physician who proceeds to perform elective major orthopedic or neurological surgery without providing the insurer with the required prior notification and a reasonable opportunity for securing a consultation in advance of the surgery with a physician of their [sic] choice shall be subject to the penalties of these rules. Upon receipt of the notice of intent to perform surgery, the insurer shall promptly notify the physician of their [sic] intent to seek independent consultation, if they [sic] so desire. Such consultation shall not be delayed.

"(5) Surgery which must be performed promptly, i.e. before five (5) days, because the condition is life threatening or there is rapidly progressing deterioration or acute pain not manageable without surgical intervention, is not considered elective surgery. In such cases, the surgeon should endeavor to notify the insurer of the need for emergency surgery."

The provisions of ORS 656.245 as they relate to this administrative rule are also terms of delegation which require implementation by the agency. This court must review OAR 436-69-501 to determine if it is within the Department's delegated power. *Springfield Education Assn. v. School Dist., supra.* The fact that the statute merely provides that medical benefits shall be provided does not mean that the Department may not place reasonable conditions on such benefits to enable the system to work more effectively and which are consistent with the policy of the statute. In this case, however, a twist on the usual administrative enforcement of a statute is found. The statute gives certain rights to claimants, including the right to a hearing on the denial of any benefits. OAR 436-69-501 provides directives, not to the claimant, but to the physician and allows the director to refuse to pay any fee for medical services performed by the physician who does not follow the dictates of the rule. There is nothing in the rule which indicates that a claimant would not be held to be responsible for those medical bills if they are refused by the Department due to the failure of the physician to follow the requirements of the rule.

In effect, the rule punishes a claimant by refusing to pay duly incurred medical bills that are the result of a compensable injury, because the physician failed to follow the Department's rule. Of course, under ORS 656.283, the claimant could request a hearing on the Department's refusal to pay for the medical services. However, at a hearing, the only issue would be whether the physician followed the rule and whether the director was acting within his discretion under the rule in punishing the physician by failing to allow payment. A claimant, under the rule, would not be able to defend on the basis that the treatment was reasonable, necessary and resulted from a compensable injury, which is all that is required under the statute.

By enacting OAR 436-69-501, the Department has created a direct penalty against physicians and an indirect penalty against claimants for actions over which claimants have no control. Neither of these actions is authorized by statute, and both are inconsistent with the clear policy of the Workers' Compensation Act that a claimant be compensated for reasonably necessary medical bills incurred as a result of a

compensable injury. ORS 656.245(1). OAR 436-69-501 exceeds the authority of the agency and is invalid.

■ Petitioner challenges OAR 436-69-801(4) on the ground that it also exceeds the statutory authority of the Department. The rule states:

"Failure to deny the claim within 60 days from the receipt of the first medical report shall render the insurer liable for the medical services prior to the denial."

ORS 656.262(4) requires that the first installment of compensation be paid no later than the 14th day after the subject employer has notice or knowledge of the claim. ORS 656.262(6) provides:

"Written notice of acceptance or denial of the claim shall be furnished to the claimant by the insurer or self-insured employer within 60 days after the employer has notice or knowledge of the claim. Pending acceptance or denial of a claim, compensation payable to a claimant does not include the cost of medical benefits or burial expenses."

Petitioner also cites ORS 656.262(9), which provides for a penalty of 25 percent of the amount then due, plus attorney fees, if an insurer or employer unreasonably delays acceptance or denial of a claim. These statutory provisions are terms of delegation which require a determination by this court as to whether the policy expressed in OAR 436-69-801(4) is within the delegation. *Springfield Education Assn. v. School Dist., supra.*

OAR 436-69-801(4) does not take away from a claimant the right to recover for unreasonable delay in acceptance or denial of a claim, but, rather, adds an additional right to recover for medical services rendered prior to the denial if the insurer fails to deny within 60 days from the date of receipt of the first medical report, a right not granted to claimants under any statute. The legislature created a penalty for insurers for unreasonable delay in denying a claim. The Department exceeded its authority in providing an additional penalty when one had already been expressly authorized by the legislature. OAR 436-69-801(4) is invalid.

■ Petitioner next challenges the rules as a whole on the grounds that they violate constitutional provisions, exceed the statutory authority of the agency and were adopted without

compliance with applicable rule-making procedures as required by ORS 183.400(4). The primary argument under both the constitutional and statutory authority is that the Department enacted the rules after it had attempted to obtain the changes through legislation and the legislature had refused to adopt the changes that it suggested. Under ORS 183.400(1), which governs direct review of administrative rules, judicial review of the rules is specifically limited to an examination of:

"(a)   the rule under review;

"(b)   the statutory provisions authorizing the rule; and

"(c)   copies of all documents necessary to demonstrate compliance with applicable rule-making procedures."

We have no power to consider the effect, if any, of the fact that the Department originally sought to make these changes through legislative action and failed.

■      Petitioner's final argument is that the rules were adopted without compliance with applicable rule-making procedures. She contends that the Department violated ORS 183.335(3), because it failed to consider fully written submissions designated RJR Exhibit EE and RJR Exhibit FF and to consider fully or give good faith attention to the oral submission of Representative Kerans at the hearing. All of these submissions are testimony by members of the House Labor Committee to the effect that the subject rules exceed the statutory authority of the agency.

Exhibit C to the order adopting the subject rules summarizes the testimony considered by the Department. Included in this summary are several comments which directly or indirectly challenge the statutory authority for the rules. In response to each, the Department stated that the rule is authorized. The fact that the director rejected the testimony does not mean that he violated ORS 183.335(3). Exhibit C supports the director's argument that the Department considered and rejected testimony to the effect that the rules are not authorized by statute. The Department complied with applicable rule-making requirements in adopting the challenged rules.

OAR 436-69-201(2) and 436-69-401(1) and (2) are valid, and OAR 436-69-301(3), 436-69-501 and 436-69-801(4) are invalid.