Argued and submitted June 19, rules upheld October 2, 1985

SCHLIP et al,
*Petitioners,*

*v.*

OREGON FISH AND WILDLIFE COMMISSION,
*Respondent.*

(CA A32761)

707 P2d 606

Garry P. McMurry, Portland, argued the cause for petitioners. With him on the brief were Debra A. Jenks and Rankin, McMurry, VavRosky & Doherty, Portland.

Mary J. Deits, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a petition for judicial review pursuant to ORS 183.400,[1] challenging the validity of rules adopted by respondent Oregon Fish and Wildlife Commission (Commission). Petitioners allege that the escapement goals and ocean harvest quotas set pursuant to these rules have devastated the ocean Coho salmon fisheries of Oregon and should be invalidated. We uphold the challenged rules.

In 1983, the Oregon legislature directed the Commission to adopt rules governing public and private salmon hatchery practices.[2] The Commission thereupon promulgated administrative rules directed at salmon management and hatchery operations, portions of which are the subject of petitioners' challenge.[3] In part, these rules formally adopted existing policies that the Commission had been following for several years.[4]

■   Petitioners first argue that the Commission exceeded its statutory authority by adopting rules which allegedly abrogate the state's policy toward food fish as set forth in ORS 506.109. That statute provides, in part:

"It is the policy of the State of Oregon that food fish shall be managed to provide the optimum economic, commercial, recreational, and aesthetic benefits for present and future generations of the citizens of this state."

---

[1] ORS 183.400 provides:

"(1) The validity of any rule may be determined upon a petition by any person to the Court of Appeals * * *."

[2] ORS 506.124 provides:

"The commission shall adopt rules governing public and private salmon hatchery practices by July 1, 1984. The commission shall also submit quarterly reports to the Emergency Board on matters related to the adoption of rules and the impact of hatchery practices on the salmon resource."

[3] Specifically, petitioners challenge OAR 635-07-515(1) of the "Fish Management Policy" and OAR 635-07-525, the "Wild Fish Management Policy," both adopted June 1, 1984. For brevity, we do not set them out in full. Their impact will appear from the body of this opinion.

[4] From 1979 to 1981, the Oregon Department of Fish and Wildlife managed the propagation and harvesting of ocean Coho salmon in an effort to rehabilitate wild stocks of Coho—the so called "Wild Fish Management Policy." In 1982, the Oregon Fish and Wildlife Commission drafted, but did not promulgate as an administrative rule, the "Coho Plan." The "Coho Plan" incorporated the "Wild Fish Management Policy" and in part was intended to restore wild Coho stocks to optimum levels.

Petitioners claim that ORS 506.109 has been abrogated by the Commission's adoption of the Wild Fish Management Plan, OAR 635-07-525, which provides for the management of wild and hatchery Coho salmon for the protection and enhancement of wild stocks. Petitioners further claim that OAR 635-07-515(1), which provides that "fisheries will be maintained but not necessarily with historical allocations to user groups or seasons," also contributes to the abrogation of ORS 506.109.

Although the rules adopted to enhance wild stocks of Coho may indeed have the negative impact on Coho fisheries that petitioners allege, it is the commission's duty to manage food fish for present *and future* generations of Oregonians. It is the Commission's judgment that preserving wild stocks of Coho under OAR 635-07-525 is in the best interest of the entire Coho fishery for long-term benefits; such a decision is well within the statutory mandate of ORS 506.109.[5] Petitioners may not agree with the Commission's policy, but it is not for this court to substitute its judgment—or petitioners'—for that of the Commission's; our scope of review is strictly limited. ORS 183.400(4).[6] Furthermore, as the Commission points out, nothing in ORS 506.109 requires that historical allocations to users or seasons be maintained. OAR 635-

---

[5] ORS 506.109(1) also sets as a goal:

"(1) To maintain all species of food fish at optimum levels in all suitable waters of the state and prevent the extinction of any indigenous species."

Obviously, such a mandate requires the balancing of various competing interests and gives the Commission broad discretion in implementing policies to reach the legislature's articulated goals.

[6] ORS 183.400(3) and (4) provide:

"(3) Judicial review of a rule shall be limited to an examination of:

"(a) The rule under review;

"(b) The statutory provisions authorizing the rule; and

"(c) Copies of all documents necessary to demonstrate compliance with applicable rule-making procedures.

"(4) The court shall declare the rule invalid only if it finds that the rule:

"(a) Violates constitutional provisions;

"(b) Exceeds the statutory authority of the agency; or

"(c) Was adopted without compliance with applicable rulemaking procedures."

07-515 contains a variety of policies that are to be balanced to meet fish management goals; likewise, OAR 635-07-515(1) is well within the statutory mandate of ORS 506.109.

■      Petitioners next assign as error the Commission's reliance on ORS 506.124, which required it *to adopt rules regarding fish hatchery practice*, for its statutory authority in adopting the challenged rules. It is true that the Commission also chose to include in its rulemaking proceeding the adoption of several rules codifying existing fish *management* practices which had not yet become administrative rules. However, although ORS 506.124 may not relate specifically to fish management practices, the Commission certainly has statutory authority to promulgate rules on the subject. ORS 506.119 expressly states:

> "(1)   The commission has the authority to formulate and implement the policies and programs of this state for the management of food fish, and may perform all acts necessary to administer and carry out the provisions of the commercial fishing laws.

> "(2)   In accordance with any applicable provision of ORS 183.310 to 183.550, the commission may promulgate rules to carry out the provisions of the commercial fishing laws."

ORS 506.124 did not modify the Commission's general authority to formulate and implement its policies through administrative rules. The Commission felt that the adoption of rules codifying general fish management policies would complement the rules governing specific hatchery practices; it had authority to act on that view.

In their reply brief, petitioners suggest that, although the Commission may have had the general authority to implement the challenged rules, the public notice of the Commission's proposed adoption of the rules, required by ORS 183.335, was deficient in that it did not warn that policies other than those related to fish hatchery practices would be under consideration. *See* ORS 183.400(4)(c), n 6, *infra.* Petitioners rely for this contention on the cover letter under which the drafts of the proposed rules were circulated to interested parties, which refers to ORS 506.124 as statutory authority. However, the official statement of notice attached to the final

draft of the rules also cites ORS 506.119[7] as statutory authority for the rules.

In any event, the introduction to the proposed rules attached to the final draft made it clear that issues other than hatchery practices were implicated. The introduction explains that general fish management policies pursued by the Commission but which had not yet been made rules were the basis for hatchery operations and practices and would thus be included in the rulemaking process. Even a cursory glance at the introduction to the final draft also reveals that the two challenged rules, the Fish Management Policy and Wild Fish Management Policy, were prominent features of the overall plan under discussion. Finally, it is clear from the record that a great deal of testimony was heard regarding the challenged rules, including opposing testimony given by one of the petitioners in this case, reflecting the adequacy of the notice given. The notice requirements of ORS 183.335 were complied with in the promulgation of the challenged rules.

■     In their third assignment of error, petitioners offer a largely factual argument to the effect that the challenged rules are arbitrary and capricious, because they have not led to the results hoped for by the Commission. The efficacy of the rules is not subject to review by this court. Our scope of revi limited by the terms of ORS 183.400, and we may invalidate a rule only if it violates a constitutional provision, exceeds the statutory authority of the agency or was adopted without compliance with the Administrative Procedures Act, ORS ch 183. *See Kemp v. Workers' Comp. Dept.*, 65 Or App 659, 672 P2d 1343 (1983), *mod* 67 Or App 270, 677 P2d 725, *rev den* 297 Or 227 (1984). Because this assignment does not make out a claim under any of those theories, it fails.

■     Finally,[8] petitioners argue that the challenged rules are invalid by reason of the Commission's failure to comply

---

[7] ORS 496.146, 496.138 and 506.129 are also relied on by the Commission as statutory authority for the rules. ORS 496.138 provides:

"(1) The commission has the authority to formulate and implement the policies and programs of this state for the management of wildlife, and may perform all acts necessary to administer and carry out the provisions of the wildlife laws."

[8] Petitioners' fourth assignment of error does not require discussion.

adequately with ORS 183.335(2)(b)(D) and 183.540.[9] The simple answer to petitioners' argument regarding ORS 183.335(2)(b)(D) is found in ORS 183.400, which governs judicial review of Administrative Rules. This section reads, in pertinent part:

"(7)   The court shall not declare a rule invalid because the fiscal impact statement required by ORS 183.335 is insufficient or inadequate."

■      ORS 183.540 is not expressly exempted from review by ORS 183.400(7). ORS 183.540 was added to ORS chapter 183 in 1981 in response to the small business community's concern over the cost of implementing administrative rules. The intent was to give small businesses special consideration, because larger businesses were thought to be able to better deal with the cost of implementing rules, creating a disportionate regulatory impact and competitive disadvantage for small businesses. Senate Committee on Trade and Economic Development, July 13, 1981, p 6.

The Commmission concluded that, because the rules merely codified existing policy, no additional economic impact

---

[9] ORS 183.335(2)(b) provides, in part:

"(b)   The agency shall include with the notice of intended action given under subsection (1) of this section:

"* * * * *

"(D) A statement of fiscal impact identifying state agencies, units of local government and the public which may be economically affected by the adoption, amendment or repeal of the rule and an estimate of that economic impact on state agencies, units of local government and the public. In considering the economic effect of the proposed action on the public, the agency shall utilize available information to project any significant economic effect of that action on businesses which shall include a cost of compliance effect on small businesses affected."

ORS 183.540 provides:

"When the economic effect analysis shows that the rule has a significant adverse effect on small business and, to the extent consistent with the public health and safety purpose of the rule, the agency shall reduce the economic impact of the rule on small business by:

"(1) Establishing differing compliance or reporting requirements or timetables for small business;

"(2) Clarifying, consolidating or simplifying the compliance and reporting requirements under the rule for small business;

"(3) Utilizing objective criteria for standards; or

"(4) Exempting small businesses from any or all requirements of the rule."

would be felt from their adoption. Although this approach pays little more than lip-service to the provisions of ORS 183.540, we believe that it is justified under the facts of this case. We caution, however, against making such assumptions in every case; no exemption from the rulemaking procedures of ORS chapter 183 necessarily exists simply because a proposed rule is considered a "housekeeping" provision.

ORS 183.540 only operates when the economic effect analysis required by ORS 183.335(2)(b)(D) reveals that the rule would have a significant adverse effect on small businesses. Here, as petitioners themselves point out, most, if not all, of the businesses affected by the challenged rules are "small businesses." Thus, the concern over disportionate regulatory impact and competitive disadvantage attaching to "small business" *vis-à-vis* "big business"—the basis for adopting ORS 183.540—is not present in this case. To begin exempting the specific businesses at which the challenged rules are directly aimed and which they are intended to regulate would be inconsistent with the purpose of the rule.

Rules upheld.