Argued and submitted June 4, 2014, OAR 635-500-6700 to 635-500-6765 held valid March 18, 2015

Steve FICK,
James Wells, and
Fishhawk Fisheries, Inc.,
*Petitioners,*

*v.*

OREGON DEPARTMENT OF
FISH AND WILDLIFE,
*Respondent,*

*and*

THE COASTAL CONSERVATION ASSOCIATION
and David Schamp,
*Intervenors-Respondents.*

Department of Fish and Wildlife
A153317

346 P3d 604

C. Robert Steringer argued the cause for petitioners. With him on the briefs were John C. Rake and Harrang Long Gary Rudnick P.C.

Inge D. Wells, Assistant Attorney-in-Charge, argued the cause for respondent. With her on the brief were Ellen

F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Matthew J. Preusch, Assistant Attorney General.

Bruce H. Cahn argued the cause for intervenors-respondents. With him on the brief were Amy J. Heverly, Ball Janik LLP, Gregory A. Chaimov, and Davis Wright Tremaine LLP.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Egan, Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

Petitioners, Steve Fick, James Wells, and Fishhawk Fisheries, Inc., seek judicial review of certain rules adopted by respondent Oregon Department of Fish and Wildlife (ODFW).[1] In particular, pursuant ORS 183.400(1),[2] petitioners challenge a series of administrative rules entitled "Columbia River Recreational and Commercial Fisheries Management Strategies," numbered OAR 635-500-6700 to 635-500-6765. On judicial review, petitioners challenge the rules on seven grounds. We write to address petitioners' first ground for challenge, in which they assert that the rules should be declared invalid because they were adopted without compliance with ORS 183.540, and reject petitioners' remaining contentions without discussion. As explained below, we conclude that the rules in question are valid.

Following letters from then-Oregon Governor Kitzhaber to the Oregon Fish and Wildlife Commission (the commission), the Columbia River Fishery Management

---

[1] The Coastal Conservation Association and David Schamp, intervenors in this review proceeding, have filed a brief in which, like ODFW, they contend that this "court should * * * reject Petitioners' challenge to the ODFW rules and affirm the validity of those rules."

[2] ORS 183.400 provides, in part:

"(1) The validity of any rule may be determined upon a petition by any person to the Court of Appeals in the manner provided for review of orders in contested cases. The court shall have jurisdiction to review the validity of the rule whether or not the petitioner has first requested the agency to pass upon the validity of the rule in question, but not when the petitioner is a party to an order or a contested case in which the validity of the rule may be determined by a court.

"(2) The validity of any applicable rule may also be determined by a court, upon review of an order in any manner provided by law or pursuant to ORS 183.480 or upon enforcement of such rule or order in the manner provided by law.

"(3) Judicial review of the rule shall be limited to an examination of:

"(a) The rule under review;

"(b) The statutory provisions authorizing the rule; and

"(c) Copies of all documents necessary to demonstrate compliance with applicable rulemaking procedures.

"(4) The court shall declare the rule invalid only if it finds that the rule:

"(a) Violates constitutional provisions;

"(b) Exceeds the statutory authority of the agency; or

"(c) Was adopted without compliance with applicable rulemaking procedures."

Workgroup was appointed to develop "an alternative management framework for non-tribal Columbia River recreational and commercial fisheries." The workgroup subsequently produced a document outlining management strategies that it recommended to the Fish and Wildlife Commissions of Oregon and Washington. The recommendations were "intended to enhance the economies of Oregon and Washington as a whole, ensure the long-term viability of recreational and commercial fisheries and those communities that rely on them, and contribute to fish conservation and recovery." Based on those recommendations, ODFW developed and proposed the administrative rules under review.

In late 2012, ODFW issued a notice of proposed rulemaking for a hearing scheduled on December 7, 2012. Then, in December 2012, the commission adopted the proposed new rules, numbered as OAR 635-500-6700 to 635-500-6765. Petitioners sought judicial review of the new rules, asserting that the agency violated applicable rulemaking procedures and that the rules were contrary to controlling state statutes. Thereafter, ODFW sought an extension of time to file the agency record with this court "in order to address petitioners' claims that the agency failed to comply with certain rulemaking procedures." Although the agency did not concede the merits of petitioners' assertions, it contended "that judicial economy and the interests of justice would best be served by amending the fiscal impact statement and re-noticing the rules." According to ODFW, that process would address the procedural concerns raised by petitioners. The agency further noted to the court that

> "[t]he Commission will determine whether to repeal, re-adopt, or amend the rules at a May 2013 meeting. If the present rules are repealed or amended, this proceeding will become moot and respondent will avoid the cost of unnecessarily preparing a judicial review record. If the rules are re-adopted, a single record may be provided at that time."

The court granted the motion and held the case in abeyance while the agency completed the process described in the motion.[3]

---

[3] The court also granted a stay on the enforcement of the rules, and that stay remained in effect while the judicial review was held in abeyance.

In March 2013, ODFW issued a new notice of rulemaking for a hearing scheduled on May 10, 2013. The notice stated that

"[a]dditional time to comment on these rules, first adopted December 7, 2012, is being provided in part to address alleged deficiencies in either the process or economic analysis of that rulemaking, articulated for the first time by the petitioners on appeal in Fick v. Oregon Department of Fish and Wildlife, CA# A153317."

That notice of rulemaking was accompanied by a Statement of Need and Fiscal Impact and a "Fiscal and Economic Impact Statement for the May 10, 2013 Hearing In the Matter of Rules Relating to Columbia River Fishery Management for 2013 and Beyond" (the FEIS).[4] Eventually, in June 2013, the commission readopted OAR 635-500-6700 to 635-500-6765, which, as petitioners note, "are identical in substance to th[e rules] passed on December 7, 2012."

The rules establish the commission's policy for the "non-tribal Columbia River Recreational and Commercial Fisheries Management Framework," OAR 635-500-6700, and address the management of certain species of fish protected under the Endangered Species Act (ESA). OAR 635-500-6705 articulates the "Guiding Principles for Columbia River fisheries management." Those are to

"(1)  Promote the recovery of ESA-listed species and the conservation of wild stocks of salmon, steelhead, and sturgeon on the Columbia River.

"(2)  Continue leadership on fish recovery actions, including improved fish survival through the federal Columbia River hydropower system, improved habitat conditions in the tributaries and estuary, hatchery reform, reduced predation by fish, birds, and marine mammals, and harvest management that meets conservation responsibilities.

"(3)  Continue to meet terms of U.S. v. Oregon management agreements with Columbia River Treaty Tribes.

"(4)  In a manner that is consistent with conservation and does not impair the resource, seek to enhance the

---

[4] The rulemaking hearing was later rescheduled for June 6, 2013.

overall economic well-being and stability of Columbia River fisheries in Oregon.

"(5)    For steelhead, salmon and sturgeon, prioritize recreational fisheries in the mainstem and commercial fisheries in off-channel areas of the lower Columbia River. Toward this end:

"(a)    Assign mainstem recreational fisheries a sufficient share of ESA-impacts and harvestable surplus to enhance current fishing opportunity and economic benefit.

"(b)    Assign commercial fisheries a sufficient share of the ESA-impacts and harvestable surplus to effectively harvest fish in off-channel areas and harvest surplus fish with selective techniques in the mainstem Columbia River.

"(6)    Phase out the use of non-selective gill nets in non-tribal commercial fisheries in the mainstem Columbia River. Transition gill net use to off-channel areas.

"(7)    Enhance the economic benefits of off-channel commercial fisheries, in a manner consistent with conservation and wild stock recovery objectives. Enhancements include:

"(a)    Providing additional hatchery fish for release in off-channel areas by shifting currently available production, and where possible providing new production for release in off-channel areas, emphasizing complementary conservation benefits in tributaries.

"(b)    Expanding existing seasons and boundaries in off-channel areas and/or establishing new off-channel areas, allowing increased harvest in areas where the likelihood of impacting ESA-listed stocks is lower than the mainstem.

"(8)    Develop and implement selective-fishing gear and techniques for commercial mainstem fisheries to optimize conservation and economic benefits consistent with mainstem recreational objectives, combined with incentives to commercial fishers to expand the development and implementation of these gear and techniques.

"(9)    Maintain consistent and concurrent policies between Oregon and Washington related to management of non-tribal fisheries, to ensure orderly fisheries as well as the sharing of investments and benefits.

"(10)    To maximize economic return, develop a program that seeks to implement Marine Stewardship Council or other certification of commercial salmon and sturgeon fisheries in the Columbia River as sustainably managed fisheries."

OAR 635-500-6705. Under OAR 635-500-6710, ODFW is to "manage fisheries consistent with the guiding principles and the allocation framework and provisions in OAR 635-500-6715 through 635-500-6765."

To those ends, OAR 635-500-6715 to 635-500-6750 allocate the catch of ESA-listed salmon (spring Chinook, summer Chinook, sockeye, tule fall Chinook, upriver bright fall Chinook, coho, and chum) and white sturgeon in the Columbia mainstem and off-channel fisheries between higher-impact commercial and lower-impact recreational fishers. The rules outline a plan to shift commercial fishing with gillnets to off-channel fisheries that are populated by hatchery-reared fish and require selective fishing in the mainstem of the river. Thus, the regulatory effect is to reduce the number of protected ESA-listed salmon that can be harmed by fishing in the Columbia River.

For example, OAR 635-500-6715, which addresses spring Chinook, provides:

"(1)  Transition Period (2013-2016).

"(a)  In 2013, assign 65%, then 70% of the ESA-impact for upriver spring Chinook stocks to mainstem recreational fisheries.

"(b)  In 2013, assign 35%, then 30% to off-channel and mainstem commercial fisheries.

"(2)  Long Term (2017 and Beyond).

"(a)  Assign 80% of the ESA-impact to mainstem recreational fisheries.

"(b)  Assign 20% to commercial fisheries."

As noted, petitioners seek judicial review of the rules, asserting that they should be invalidated under ORS 183.400(4).[5] Pursuant to ORS 183.400(4), a petitioner

---

[5] While judicial review of the readopted rules was pending, petitioners filed a motion seeking a stay of the enforcement of those rules. The Appellate Commissioner denied the motion for stay, concluding that petitioners had not demonstrated that enforcement of the rules would result in irreparable harm to the petitioners or others. Furthermore, the Commissioner concluded that petitioners were not likely to prevail on the issues they raised on judicial review. On reconsideration, the Chief Judge adhered to the denial of the stay.

may challenge the validity of a rule by asserting that it (1) violates a constitutional provision, (2) exceeds the agency's statutory authority, or (3) was adopted without compliance with applicable rulemaking procedures.

Here, part of petitioners' challenge relates to whether the rules were adopted without compliance with applicable rulemaking procedures. In particular, they assert that the ODFW rules should be invalidated under ORS 183.400(4) "because the Commission violated ORS 183.540 by failing to reduce the impact of the ODFW Rules on small businesses." Under ORS 183.335(1), "[p]rior to the adoption, amendment or repeal of any rule, the agency shall give notice of its intended action[.]" Pursuant to ORS 183.335(2)(b)(E), that notice shall include

> "[a] statement of fiscal impact identifying state agencies, units of local government and the public that may be economically affected by the adoption, amendment or repeal of the rule and an estimate of that economic impact on state agencies, units of local government and the public. In considering the economic effect of a proposed action on the public, the agency shall utilize available information to project any significant economic effect of that action on businesses which shall include a cost of compliance effect on small businesses affected."[6]

ORS 183.336, in turn, provides:

> "(1) The statement of cost of compliance effect on small businesses required by ORS 183.335(2)(b)(E) must include:
>
> "(a) An estimate of the number of small businesses subject to the proposed rule and identification of the types of businesses and industries with small businesses subject to the proposed rule;
>
> "(b) A brief description of the projected reporting, recordkeeping and other administrative activities required for compliance with the proposed rule, including costs of professional services;
>
> "(c) An identification of equipment, supplies, labor and increased administration required for compliance with the proposed rule; and

---

[6] Under ORS 183.310(10), a "[s]mall business" means a legal entity "formed for the purpose of making a profit, which is independently owned and operated from all other businesses and which has 50 or fewer employees."

"(d)   A description of the manner in which the agency proposing the rule involved small businesses in the development of the rule.

"(2)   An agency shall utilize available information in complying with the requirements of this section."

Finally, under ORS 183.540,

"[i]f the statement of cost of compliance effect on small businesses required by ORS 183.335(2)(b)(E) shows that a rule has a significant adverse effect upon small business, to the extent consistent with the public health and safety purpose of the rule, the agency shall reduce the economic impact of the rule on small business by:

"(1)   Establishing differing compliance or reporting requirements or time tables for small business;

"(2)   Clarifying, consolidating or simplifying the compliance and reporting requirements under the rule for small business;

"(3)   Utilizing objective criteria for standards;

"(4)   Exempting small businesses from any or all requirements of the rule; or

"(5)   Otherwise establishing less intrusive or costly alternatives applicable to small business."

Thus, where the small business impact statement shows a significant adverse effect on small business, the agency must reduce the impact of the rules on those businesses to the extent consistent with the regulatory purpose.

ODFW contends that it was not required to take ameliorative actions under ORS 183.540 in this case because "the small business statement that the department prepared does not show that the rule[s] will have a significant adverse impact on small businesses, which would trigger the requirements of ORS 183.540." Intervenors agree with ODFW that the small business impact statement does not show that the rules have a significant adverse effect on small businesses. In addition, intervenors contend that, even if the requirements of ORS 183.540 apply, ODFW has taken appropriate steps and is not required to do anything more to mitigate any negative effects of the rules.

We conclude that the agency complied with the requirements of ORS 183.540. We explained the purpose of that statute in *Schlip v. Oregon Fish and Wildlife Comm.*, 75 Or App 462, 468-69, 707 P2d 606 (1985):

> "ORS 183.540 was added to ORS chapter 183 in 1981 in response to the small business community's concern over the cost of implementing administrative rules. The intent was to give small businesses special consideration, because larger businesses were thought to be able to better deal with the cost of implementing rules, creating a disproportionate regulatory impact and competitive disadvantage for small businesses.
>
> "* * * * *
>
> "ORS 183.540 only operates when the economic effect analysis required by ORS 183.335(2)(b) * * * reveals that the rule would have a significant adverse effect on small businesses. Here, * * * most, if not all, of the businesses affected by the challenged rules are 'small businesses.' Thus, the concern over disproportionate regulatory impact and competitive disadvantage attaching to 'small business' *vis-à-vis* 'big business'—the basis for adopting ORS 183.540—is not present in this case. To begin exempting the specific businesses at which the challenged rules are directly aimed and which they are intended to regulate would be inconsistent with the purpose of the rule."[7]

(Citation omitted.) *See also Oregon Cable Telecommunications v. Dept. of Rev.*, 237 Or App 628, 638-39, 240 P3d 1122 (2010) ("[T]he objective of the legislature in enacting ORS 183.336 was to ensure that an agency recognize and evaluate the potential economic effect of a proposed regulatory action on small business—at least as to the particular factors listed in the statute—*at the time the rule is being developed and*

---

[7] Although the "general, unadorned requirement in ORS 183.335(2)(b)(E) that a fiscal impact statement accompanying a notice of proposed rulemaking include a statement of 'the cost of compliance effect on small businesses affected' has been in effect since 1981," it was in 2005 that "the legislature enacted ORS 183.336, explicitly defining the components required to be included in the small business impact statement." *Oregon Cable Telecommunications v. Dept. of Rev.*, 237 Or App 628, 639, 240 P3d 1122 (2010). At that time, the legislature "also amended ORS 183.540 to provide that it is the small business impact statement specifically—rather than an agency's economic impact analysis generally—that determines whether an agency must make efforts to reduce the impact of the rule on small business." *Id.*

*drafted*—so that the agency can, if appropriate under ORS 183.540, take steps to address that impact in the rule itself." (Emphasis in original.)).

Here, the small business impact statement in the FEIS sets forth that the

> "types of businesses and industries with small businesses subject to the rule would include Columbia River non-tribal gillnet fishermen, fish dealers who receive Columbia River commercial non-tribal salmon landings, recreational fishing guides, food and beverage stores, gasoline stations, sporting good stores, general merchandise stores, accommodation businesses, food services and drinking places, and marinas."

The FEIS estimates the number of small businesses affected or potentially affected by the rules to include 292 gillnet permittees, 17 dealers who receive Columbia River commercial nontribal salmon landings, 102 recreational fishing guides, and an unspecified number of private charter boat operators, as well as specific numbers of stores, marinas, and places of accommodation for recreational fishers. Thus, the rules potentially had adverse effects on some small businesses (*e.g.*, some commercial fishers and dealers) and favorable effects on other small businesses potentially affected by any increase in recreational fishing.

According to the small business impact statement, the rules are not projected to change costs for reporting, recordkeeping, or other administrative activities required for compliance. As to equipment, supplies, labor, and administration required for compliance,

> "[u]nder the Management Plan, gillnet fishermen can continue to fish with gillnets in designated off-channel areas of the Columbia River during the transition period and long term. Those who fish the Columbia mainstem can continue to do so with gillnets through at least 2016 (the transition period), after which they would be required to switch to more selective gears and techniques that prove effective during the transition period."

However, the rules do not establish what gear types will be allowed, and further rulemaking and economic analysis will be required on that issue in the future, and "[m]ore accurate

numbers for costs and effectiveness will be determined by ongoing research during the transition period prior to final selection of alternative gears and rule making." Nonetheless, the statement notes that "[c]hanging type of gear would likely mean incurring new equipment costs." Furthermore, "more fishers are needed to effectively use" some of the options being studied. The statement includes a table setting forth assumed costs of some of the gear options being studied "for Columbia River commercial salmon fisheries," but notes that "the Management Plan assumes new funds to assist in the implementation of the plan and to help reduce costs to individuals." The small business impact statement describes the involvement of small businesses in the development of the rules. Finally, it notes that "a less intrusive or less costly alternative adaptation to only small business" would not be consistent with the purpose of the rules.

We begin by noting that the FEIS may not have established any *significant* effect on the class of small businesses affected by the proposed rules. We implied in *Schlip* that a "significant" effect on small businesses under ORS 183.540 is one that disproportionally affects or disadvantages small businesses as compared with the type of regulatory effect on larger businesses. 75 Or App at 468-69. Here, the regulation of the time, place, and manner of fishing on the Columbia River applies equally and with the same qualitative effect on small and large businesses engaged in fishing. Moreover, it may be that the adverse effect referred to in the statute ("*a* significant adverse effect upon small business") is one that disadvantages the entire class of small businesses affected by the rule. As noted, the effects on small businesses by the rules under review are not common to all of those businesses; some may be disadvantaged, others are not.

In any event, we need not determine whether the rules produce "a significant adverse effect upon small business" as shown by the FEIS. Assuming that they do, we nonetheless conclude that the agency did not violate the requirements of ORS 183.540. We begin by noting that OAR 635-500-6705 sets forth a number of measures to mitigate the effect of the rules on a group of small businesses—commercial fishers—who are regulated under the policies.

Those measures include increased production and release of hatchery fish in off-channel areas where it is contemplated that commercial fishers will continue to use gill nets, expansion of seasons and boundaries in off-channel areas or establishing new off-channel areas to allow for increased harvest in off-channel areas, development of selective fishing gear and techniques for commercial mainstem fisheries, and incentives to commercial fishers to expand development and implementation of those gear and techniques. Thus, it appears that, as part of the rulemaking process, the commission mitigated the effect on commercial fishers of the changes in the way that Columbia River fisheries would be managed.

More importantly, however, the text of ORS 183.540 refutes petitioners' suggestion that the statute obligates the agency to not regulate small businesses whenever that regulation harms small businesses. ORS 183.540 requires an agency to take actions to reduce the economic impact of a rule on small business only "to the extent consistent with the public health and safety purpose of the rule." When a rule regulates individuals and small businesses, ORS 183.540 does not require the undoing of that regulatory effect in order to further the cause of mitigation. Rather, the statute requires limiting the *economic* effect of a rule on small business when the expense of complying with the rule is substantial—but not at the cost of excusing compliance with the substance of the rule. *See Schlip*, 75 Or App at 469 ("To begin exempting the specific business at which the challenged rules are directly aimed and which they are intended to regulate would be inconsistent with the purpose of the rule.").

The purposes of the ODFW rules are set forth in OAR 635-500-6705. Significant among those purposes are the promotion of "the recovery of ESA-listed species and the conservation of wild stocks of salmon, steelhead, and sturgeon on the Columbia River" and the enhancement of the "overall economic well-being and stability of Columbia River fisheries in Oregon" in a "manner that is consistent with conservation and does not impair the resource." It is clear from the FEIS in this case that the agency considered the requirement of ORS 183.540 that it reduce the economic

impact of the challenged rules on small businesses and, as to that requirement, aside from the mitigation measures included within the rules, the agency concluded that "a less intrusive or less costly alternative adaptation to only small business" would not be consistent with the purpose of the rules. Thus, the agency considered the effect of the rules on small business and included mitigation measures within the rules but declined to take additional actions to reduce the effect of the rules on small business. The agency was not required to act in a manner directly inconsistent with the purpose of the rules and did not violate the statute by declining to do so. Accordingly, we reject petitioners' challenge.

OAR 635-500-6700 to 635-500-6765 held valid.