739 F.2d 1412
 1984-2 Trade Cases 66,138
 OMNI RESOURCE DEVELOPMENT CORP., Plaintiff-Appellant,
v.
CONOCO, INC., a corporation; E.I. DuPont De Nemours & Co.,
a corporation; General Electric Company, a
corporation; and the Goldfield
Corporation, a corporation,
Defendants-Appellees.
 No. 82-4615.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 15, 1983.
Decided Aug. 7, 1984.
 
 Joseph M. Alioto, Alioto & Alioto, San Francisco, Cal., for plaintiff-appellant.
 Prince A. Hawkins, Hawkins, Rhodes & Sharp, Reno, Nev., Max Gilliam, Latham & Watkins, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the District of Nevada.
 Before KENNEDY and BOOCHEVER, Circuit Judges, and EAST,* District Judge.
 KENNEDY, Circuit Judge:
 
 
 1
 This action for federal antitrust violations was terminated when the trial court granted judgment on the pleadings in favor of the defendants. The court held the suit was "in essence a claims-jumping case" and nothing more, so that the complaint did not state an antitrust violation. We affirm on the ground that the antitrust suit is barred by immunity conferred under the Noerr-Pennington doctrine.
 
 
 2
 Omni entered certain federal lands in Nevada to locate mining claims. Conoco and other parties brought a trespass suit against Omni in state court, alleging a paramount right to mine the land under unpatented lode claims. See generally 30 U.S.C. Sec. 28 (1982). The state court granted temporary and preliminary injunctions against Omni.
 
 
 3
 Omni then filed this federal antitrust suit against Conoco and other defendants. The gravamen of the complaint was that annual assessment notices and other affidavits used in the state court by Conoco and others were false and fraudulent; and that the scheme to exclude Omni through the use of false filings and statements was an antitrust violation, both under Sherman Act Section 1, as part of an agreement or conspiracy in restraint of trade, and under Sherman Act Section 2, as a monopoly or an attempt to monopolize. 15 U.S.C. Secs. 1, 2 (1982). Omni appealed after the district court dismissed the federal action with judgment on the pleadings.
 
 
 4
 We will assume, as the parties do without conceding the truth of the allegations, that if there were willful use of false affidavits or documents in the state suit, such conduct would be at least tortious under state law, but this does not overcome the doctrine that litigation, as a general rule, is protected by the First Amendment and is thus immune from antitrust challenge.
 
 
 5
 It is established that antitrust litigation must not conflict with other, fundamental interests in the political system. California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). The fundamental right of petition to the courts lies at the center of a system designed to invite the resolution of private grievances and claims by an impartial tribunal. The petition right and the adjudication process can be impaired if they are subject to collateral attacks through the antitrust laws, and antitrust liability must be circumscribed to accommodate those interests. California Motor Transport, 404 U.S. at 510-11, 92 S.Ct. at 611-612.
 
 
 6
 The general rule is that petitions to induce lawful government action are immune from attack under the antitrust laws. Noerr, 365 U.S. at 135-36, 81 S.Ct. at 528-529; Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc., 690 F.2d 1240, 1251 (9th Cir.1982), cert. denied, 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983). The immunity can be lost, however, if such steps are a mere sham, undertaken solely to interfere with free competition and without the legitimate expectation that such efforts will in fact induce lawful government action. Noerr, 365 U.S. at 144, 81 S.Ct. at 533.
 
 
 7
 The standard for determining when a suit is a sham, taking it outside of Noerr-Pennington immunity, is not well defined. The usual example given for a sham suit is one which is part of a pattern of baseless and repeated claims. Otter Tail Power Co. v. United States, 410 U.S. 366, 380, 93 S.Ct. 1022, 1031, 35 L.Ed.2d 359 (1973), on remand, 360 F.Supp. 451 (D.Minn.1973), sum. aff'd, 417 U.S. 901, 94 S.Ct. 2594, 41 L.Ed.2d 207 (1974). When the antitrust plaintiff challenges one suit and not a pattern, a finding of sham requires not only that the suit is baseless, but also that it has other characteristics of grave abuse, such as being coupled with actions or effects external to the suit that are themselves anti-competitive. See Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 644 n. *, 97 S.Ct. 2881, 2894, 53 L.Ed.2d 1009 (1977) (Blackmun, J., concurring). See, e.g., Clipper Exxpress, 690 F.2d at 1253-54 (agreement to protest every new tariff announced by competitor, regardless of the rate's legality or competitive justification, with the intent to force competitor to withdraw the rate, is not immune); Handgards, Inc. v. Ethicon, Inc., 601 F.2d 986, 993 (9th Cir.1979) (an attempt to assert an invalid patent in a bad faith patent infringement action is not immune); Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board of Culinary Workers, 542 F.2d 1076, 1081 (9th Cir.1976) (actions taken to bar a competitor's access to governmental agency are not immune), cert. denied, 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977).
 
 
 8
 The state suit which gave rise to the alleged antitrust violation in the instant case is not a sham under these rules; its filing and prosecution in the state court were acts immune from antitrust challenge. The Noerr-Pennington doctrine requires, therefore, that the antitrust suit be dismissed.
 
 
 9
 The state suit here was isolated litigation, not part of a pattern or series of baseless suits. Indeed, the suit can not be characterized as baseless at all; for although we do not know the outcome, at least to the point of a preliminary injunction the state court plaintiffs were successful. See Franchise Realty, 542 F.2d at 1079 ("We find it particularly hard to accept the characterization as 'baseless' or 'frivolous' of opposition which is entirely successful in obtaining the governmental action sought ....").
 
 
 10
 The filing of the state court suit did not in itself cause an anti-competitive effect. Omni was injured by the finding against it in state court and by the injunction, not by the mere filing of the suit. Cf. Otter Tail Power, 410 U.S. at 379-80, 93 S.Ct. at 1030-1031. See Franchise Realty, 542 F.2d at 1084. Further, there were no anti-competitive effects or wrongful acts external to the litigation or to the result reached in the litigation. See Id. at 1079 n. 2 ("We know of no case that holds that joint action which succeeds in persuading a public body to make an erroneous decision can give rise to a cause of action under the Sherman Act").
 
 
 11
 Finally, nothing more is alleged than the use of false affidavits in the state suit. That, however, is a charge that can easily be leveled, and it is thus insufficient by itself to overcome Noerr-Pennington immunity. See Ernest W. Hahn, Inc. v. Codding, 615 F.2d 830, 835 n. 3 (9th Cir.1980); Franchise Realty, 542 F.2d at 1082-83; Hydro-Tech Corp. v. Sundstrand Corp., 673 F.2d 1171, 1177 n. 8 (10th Cir.1982). A party should not as a matter of course have the accuracy of its testimony in a prior judicial proceeding subject to subsequent and collateral attack in the form of an antitrust suit.
 
 
 12
 Clipper Exxpress, 690 F.2d 1240, is not to the contrary. We faced there a complaint which alleged a pattern of fraudulent activity. As part of a scheme to injure competition, the antitrust defendants agreed to challenge before the ICC any lower rates published by the antitrust plaintiff. The protests were filed regardless of merit, in the hope that the antitrust plaintiff would withdraw the lower rates. Id. at 1253-54. But the sham filings were only part of the anti-competitive agreement; the scheme also included pervasive fraud in the ICC proceedings, and we held that the Walker Process doctrine, see Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), was therefore applicable. Clipper Exxpress, 690 F.2d at 1259-60.
 
 
 13
 The case before us does not contain elements of the grave abuses alleged in Clipper Exxpress. There is no showing that the litigation is an integral part of a larger, external plan to threaten competition. Here, there was no pattern of protests designed "to saddle [Omni] with such onerous regulatory and administrative burdens that it would be forced to withdraw" from the market. Clipper Exxpress, 690 F.2d at 1254. The only allegation is that fraudulent affidavits were presented to the court. Further, the state court here, unlike the ICC in Clipper Exxpress, id. at 1262, apparently found the affidavits convincing, since injunctive relief was granted against Omni. We think that when a state court has ruled on matters later challenged in an antitrust suit, the federal complaint must allege with particularity some abuse or error in the prior proceeding. Cf. Vendo Co., 433 U.S. at 644 n. *, 97 S.Ct. at 2894 (1977) (Blacknum, J., concurring). Considerations of federalism and comity underlie this additional hurdle for the potential antitrust plaintiff. See Los Angeles Memorial Coliseum Commission, 717 F.2d at 472 n. 3 ("Vendo compels a higher standard for enjoining state court proceedings than Clipper Exxpress requires for other antitrust remedies").
 
 
 14
 We need not decide what allegations might be sufficient in other circumstances. Omni's complaint, however, impresses us as a plea for a second day in court on issues already litigated and lost. We are not inclined to let the antitrust laws be the mechanism for that challenge.
 
 
 15
 AFFIRMED.
 
 
 
 *
 Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation