J. Kent LLEWELLYN, D.C., P.C., dba Llewellyn Chiropractic Clinic; William J. Cash, D.C., dba AA Chiropractic Clinic; Steve A. Deshaw, D.C., dba Chiropractic Physicians Clinic; Douglas Held, D.C., dba Held Chiropractic Clinic; D.E. Beeson, D.C., dba Beeson Chiropractic Center; John Schmidt, D.C., dba Chiropractic Physicians Clinic; Lyndon McGill, D.C., dba East Salem Chiropractic Clinic; Tom Wright, D.C., dba Wright Chiropractic Clinic; Bruce Bamforth, D.C., dba Jacksonville Chiropractic Offices, Plaintiffs-Appellants,

v.

Morris K. CROTHERS, M.D.; Roy Green, M.D.; and State Action Insurance Fund Corporation, Defendants-Appellees.

Nos. 83–4019, 83–4037.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 10, 1984.

Decided July 8, 1985.

James Clark, Spears, Lubersky, Campbell & Bledsce, Portland, Or., for SAIF.

Before KENNEDY and FERGUSON, Circuit Judges, and WILLIAMS,* District Judge.

KENNEDY, Circuit Judge:

Plaintiffs, licensed chiropractors in the State of Oregon, brought this action for damages and injunctive relief based on alleged antitrust, equal protection, and due process violations in the setting of fee guidelines and maximum fee schedules for chiropractic services under the Oregon Workers' Compensation Act (the Act), Or. Rev.Stat. §§ 656.001–656.794 (1983). The principal issue in the case concerns the immunity of the defendants for implementing policies of the state, and, consequently, their identities and governmental capacities are significant. The individual defendants are Dr. Roy L. Green and Dr. Morris K. Crothers, respectively the Director and the Medical Director of the Oregon Workers' Compensation Department (OWCD). The corporate defendant, the State Accident Insurance Fund Corporation (SAIF), is a public corporation created by the Oregon legislature to insure employers' liabilities under the Act.

The district court granted defendants' motions to dismiss the due process claim and their motions for summary judgment. With regard to the antitrust claims, the court found immunity for all defendants under the doctrine of *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The court also rejected plaintiffs' equal protection challenge, finding a rational basis for the distinctions drawn between chiropractors and other health care providers. The district court entered final judgment in favor of defendants. We affirm.

Oregon law requires almost all employers to provide medical and income protec-

Gary D. Allen, Allen & Vick, Salem, Or., and C. Jacob Ladenheim, Ladenheim & Campbell, Fincastle, Va., for plaintiffs-appellants.

William F. Nessly, Jr., Asst. Atty. Gen., Salem, Or., for Crothers and Green.

* Honorable David W. Williams, Senior U.S. District Judge for the Central District of California, sitting by designation.

tion for job-related accidents. Or.Rev.Stat. § 656.023 (1983); *see also* Or.Rev.Stat. § 656.027 (1983). The obligation may be satisfied through private insurance, state insurance, or self-insurance. State coverage is provided through SAIF. SAIF's board of directors is appointed by the governor and confirmed by the state senate. Or.Rev.Stat. § 656.751(1) (1983). SAIF issues guarantee contracts to insure employers for their liability under the Act, Or.Rev. Stat. § 656.419(1) (1983), administers claims, and pays benefits to injured workers employed by covered employers. Or. Rev.Stat. §§ 656.245, 656.262(1), 656.-752(2)(b) (1983). It also enforces employers' obligations to insure against their compensation liabilities. Or.Rev.Stat. § 656.-504, 656.566, 656.752(2)(a) (1983).

The administrative and judicial aspects of the workers' compensation program are entrusted to the OWCD, which consists of the board, the Director, and their various assistants and employees. Or.Rev.Stat. § 656.708(1) (1983). The Director, Roy Green, as the administrative head of the OWCD, possesses comprehensive authority to "[m]ake and declare all rules and regulations which are reasonably required in the performance of the director's duties." Or. Rev.Stat. § 656.726(3)(a) (1983). In exercising these duties, the Director is assisted by the Medical Director, Dr. Morris Crothers, who advises the Director on medical matters and prepares medical rules.

The Act specifically authorizes the Director to promulgate reasonable rates to be paid for medical services provided pursuant to the Act. Or.Rev.Stat. § 656.248(1) (1983). It further empowers the Director to adopt formal "medical practice rules" on the recommendation of the Advisory Committee on Medical Care and in accordance with the Oregon Administrative Procedure Act, Or.Rev.Stat. §§ 183.310–183.550 (1983). Or.Rev.Stat. § 656.794(2)(b) (1983).

Appellants base their Sherman Act claims on three different actions taken by the defendants: (1) the implementation of a de facto fee schedule in 1979; (2) the adoption of a "90th percentile" fee limitation in

1980; and (3) the adoption of a treatment schedule limitation in 1980. We describe each of these matters and occurrences briefly.

In 1979 Crothers used empirical data to determine the normal, average fees charged for various services by health care providers. He obtained from SAIF a sampling of bills from health care providers, computed figures constituting the 90th percentile, and used the results to adjust individual bills pursuant to section 656.248(2). The parties refer to these actions as the de facto rate adoption. In 1981 an OWCD Hearings Referee found the adoption of the de facto rate schedule to be improper because it bypassed the required rulemaking procedures of the Oregon Administrative Procedure Act. The Referee held that Crothers had not exceeded his authority, but rather that he had exercised it in an arbitrary and capricious manner.

In 1980, noting that bills to carriers for medical and chiropractic office visits were excessive, Dr. Crothers prepared fee guidelines for medical doctors and for chiropractors. He computed a level of charges, equal to the fees charged by the lowest 90 percent of billing offices, which he determined was the reasonable fee for the services provided. The guidelines were updated annually for chiropractors.

In 1980, after public hearings, the OWCD adopted an administrative rule which limited both the number and the frequency of treatments available to injured workers. Or.Admin.R. § 436–69–320(2) (1980) (current version at Or.Admin.R. § 436–69–201(2)(a) (1983) ). The rule applies to medical doctors as well as chiropractors; however, it has a more severe impact on the latter group because of the nature of their practice.

Reciting the above actions and events, plaintiffs allege Crothers and the codefendants conspired with each other and acted in bad faith to injure the chiropractors. In Count One, plaintiffs contend the conduct violated sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 (1982). In Count Two, plaintiffs maintain the same conduct

constituted a denial of due process and equal protection.

As to the individual defendants, we agree with the district court that their actions are immune from Sherman Act liability under the principle of *Parker v. Brown*, 317 U.S. 341, 352, 63 S.Ct. 307, 314, 87 L.Ed. 315 (1943), as actions of the State of Oregon in its sovereign capacity. *See Hoover v. Ronwin*, — U.S. —, 104 S.Ct. 1989, 1998, 80 L.Ed.2d 590 (1984); *Bates v. State Bar of Arizona*, 433 U.S. 350, 360, 97 S.Ct. 2691, 2697, 53 L.Ed.2d 810 (1977); *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 790, 95 S.Ct. 2004, 2014, 44 L.Ed.2d 572 (1975). The acts challenged, though taken by the individual defendants in their administrative capacity, were direct implementations of a precise statutory policy, so the case before us does not present the question whether the executive branch of a state government may formulate and pursue a policy that is within the *Parker* exemption. The Supreme Court has yet to consider this precise issue. *See Ronwin*, 104 S.Ct. at 1995 n. 17. Our court, however, addressed that question in *Deak-Perera Hawaii, Inc. v. Department of Transportation*, 745 F.2d 1281 (9th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 1756, 84 L.Ed.2d 820 (1985), and concluded that *Parker* immunity was applicable; but we need not rely on *Deak-Perera*. The actions by the individual defendants here were done as a routine implementation of a legislative policy, including rulemaking and the exercise of other delegated authority.

■ With respect to implementation of the de facto fee schedule in 1979, section 656.248 of the Oregon Revised Statutes supports the defendants' actions. The law authorizes the directors to set rates and to adjust individual bills, and as such states an affirmative and express policy to subordinate free competition among health care providers to the need of the state to reduce costs in the area of worker's compensation health care. The fee limitation rule was adopted pursuant to the statute and was actively supervised by the OWCD. Aggrieved parties could obtain further review pursuant to the provisions of the Oregon Administrative Procedure Act. Where the restraint in question is, first, clearly articulated and affirmatively expressed as a matter of state policy, and, second, subject to the active supervision of the state itself, the *Parker* defense is applicable. *California Retail Liquor Dealers Association v. Mid-Cal Aluminum, Inc.*, 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980) (citing *City of Layfayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 410, 98 S.Ct. 1123, 1135, 55 L.Ed.2d 364 (1978)). The requisites are met here, and the adoption of the fee limitation is immune from the antitrust laws under *Parker*.

■ The individual defendants are also immune for use of the treatment frequency schedule, despite its lack of specific statutory authorization. The Director is empowered to make all rules which are reasonably required in the performance of his duties. Or.Rev.Stat. § 656.726(3)(a). The Act also creates an Advisory Committee on Medical Care which is obligated to prepare and submit to the Director appropriate rules governing the furnishing of medical care. Or.Rev.Stat. § 656.794. The Oregon Court of Appeals has validated the frequency limitation schedule as currently enacted. *Kemp v. Workers' Compensation Department*, 65 Or.App. 659, 672 P.2d 1343, 1345–46 (1983), *modified*, 67 Or.App. 270, 677 P.2d 725 (1984). The state court concluded that the regulation was designed to ensure that treatments received are both reasonable and necessary and held the regulation was within the scope of section 656.245 of the Oregon Revised Statutes. The regulation additionally furthers the state's interest in minimizing health care costs. Under *Parker*, immunity is fully applicable.

The adoption of the de facto fee schedule presents some different questions, namely whether action within the intendment of section 656.248 and entitled to *Parker* immunity loses such immunity because taken in a procedurally improper manner. We hold that such action may retain its immune character, and that it does so in this case.

At the outset, we should note that even the constitutional invalidity of the attempted state regulation is not an appropriate basis for disregarding the immunity conferred by *Parker*. *Preferred Communications, Inc. v. City of Los Angeles*, 754 F.2d 1396, 1414 (9th Cir.1985). *Accord, Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). From this, it should follow that a procedural irregularity in the adoption of the challenged state regulation does not render *Parker* inapplicable.

Further, the theoretical underpinning for the *Parker* doctrine is the Supreme Court's pronouncement that the Sherman Act was not intended to reach the activities of state governments. A state's antitrust immunity springs from an essential principle of federalism, the necessity to respect a sovereign capacity in the several states. *Ronwin*, 104 S.Ct. at 1995–96. Given this purpose, it follows that actions otherwise immune should not forfeit that protection merely because the state's attempted exercise of its power is imperfect in execution under its own law.

> State laws intended to displace the antitrust laws may delegate to public agencies or officials the power to act, decide, or regulate in order to achieve anticompetitive results. Of course, state law "authorizes" only agency decisions that are substantively and procedurally correct. Errors of fact, law or judgment by the agency are not "authorized," and state tribunals will normally reverse erroneous acts or decisions. If the antitrust court demands unqualified "authority" in this sense, it will inevitably become the standard reviewer of governmental agencies whenever it is alleged that the agency, though possessing the power to engage in the challenged conduct, has exercised its power erroneously.

Areeda, *Antitrust Immunity for "State Action" After Lafayette*, 95 Harv.L.Rev. 435, 449–50 (1981). " 'Ordinary' errors or abuses in the administration of powers conferred by the state should be left for state tribunals to control." *Id.* at 453. A con-

trary rule would tempt aggrieved parties to forego available state corrective processes in hopes of obtaining the treble damages remedy conferred by the Sherman Act. Here state corrective processes were available, and the aggrieved parties could resort to them.

The availability of such processes in this case is evidenced by the invalidation of the fee schedule by the OWCD Hearings Referee. The adoption of the de facto fee schedule is immune from the antitrust laws under the principles we have stated, even though accomplished in violation of applicable rulemaking procedures.

Appellants contend, notwithstanding the foregoing analysis, that *Parker* immunity should be unavailable because of the alleged bad faith motivation of Crothers. The district court found, "[t]here is evidence that neither Crothers [nor] SAIF ... liked chiropractors as a group and that they may have actively sought ways to 'get the chiropractors.'" *Llewellyn v. Crothers*, No. 81–6462–FR, slip op. at 22 (D.Or. Apr. 20, 1983). The availability of *Parker* immunity, however, does not depend on the subjective motivations of the individual actors, but rather on the satisfaction of the objective standards set forth in *Parker* and authorities which interpret it. This must be so if the state action exemption is to remain faithful to its foundations in federalism and state sovereignty. A contrary conclusion would compel the federal courts to intrude upon internal state affairs whenever a plaintiff could present colorable allegations of bad faith on the part of defendants.

In this case, despite the possibility of improper motivation on the part of Crothers, no evidence indicates that his actions exceeded the scope of his authority. His actions were taken pursuant to an express state policy and were of a kind contemplated by the statutory scheme. The actions were not overruled through the state supervisory process, and we must conclude that Crothers' conduct served the state's best interests. In the context of determining antitrust immunity, further in-

quiry into the subjective motivations of the Oregon officials is unwarranted.

■ We turn next to the question whether the defendant SAIF is subject to antitrust challenge for its actions. The district court treated SAIF as a private, nonstate agency party despite its statutory origin and its clear interrelation with the state government. Although that proposition seems dubious to us, for the purposes of this appeal, we may assume its correctness without so holding. Even if regarded as a private party, SAIF has immunity under *Parker v. Brown* for its conduct taken pursuant to the rules and regulations of the OWCD. Those actions were mandated by the statutes, rules, and regulations of Oregon governmental entities. A restraint need not be compelled by the state for immunity to attach; it is sufficient so long as state policy permits the anticompetitive conduct, if other tests for immunity are met. *Southern Motor Carriers Rate Conference, Inc. v. United States,* —— U.S. ——, 105 S.Ct. 1721, 1728–29, 85 L.Ed.2d 36 (1985). Here the actions in question were mandated by Oregon law and regulations, and antitrust immunity is applicable. *See Mid-Cal Aluminum,* 445 U.S. at 105, 100 S.Ct. at 943; *Knudsen Corp v. Nevada State Dairy Commission,* 676 F.2d 374, 379 (9th Cir.1982); *Turf Paradise, Inc. v. Arizona Downs,* 670 F.2d 813, 822 (9th Cir.), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2308, 73 L.Ed.2d 1308 (1982). The assumed private party did no more than comply with the requirements of a state scheme that itself was exempt from antitrust attack.

■ Appellants allege that SAIF violated antitrust laws in lobbying the OWCD to take the governmental actions here in question. SAIF and its actions in this regard may have been outside the scope of *Parker* immunity, but this aspect of the complaint fails nevertheless under the *Noerr-Pennington* doctrine. Under the Sherman Act, it is not impermissible for two or more persons to associate together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 136, 81 S.Ct. 523, 528, 5 L.Ed.2d 464 (1961); *Omni Resource Development Corp. v. Conoco, Inc.,* 739 F.2d 1412, 1413 (9th Cir. 1984); *Avdin Corp. v. Loral Corp.,* 718 F.2d 897, 903 (9th Cir.1983); *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240, 1251 (9th Cir. 1982), *cert. denied,* 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983). This is true even when the petitioners act with the intent to urge a restraint of trade, *United Mine Workers v. Pennington,* 381 U.S. 657, 670, 85 S.Ct. 1585, 1593, 14 L.Ed.2d 626 (1965), so long as they harbor a "legitimate expectation that such efforts will in fact induce lawful government action." *Omni Resource Development Corp.,* 739 F.2d at 1413. Since SAIF"s lobbying efforts resulted in lawful action by the OWCD, we are presented with a required application of the *Noerr-Pennington* doctrine, and SAIF's conduct is immune from antitrust challenge.

The appellants' allegations regarding conspiracy between the governmental and private defendants do not negate the antitrust exemptions in this case. The conspiracy allegations in the complaint are couched in the most vague and conclusory terms.

> Vague and unsupported conspiracy allegations deserve very little respect from the antitrust court, given (1) the temptation for a party before a governmental body to claim an antitrust conspiracy whenever the decision is disappointing, (2) the modest likelihood that bad faith or corruption can be proved, and (3) the potential chilling effect antitrust proceedings might have on the operations of government.

Areeda, *supra,* at 452. The conspiracy allegations do not overcome the fundamental immunities we have here defined and discussed.

■ The district court was also correct in granting summary judgment on appellants' equal protection claim. The state has broad authority and discretion in the regulation of economic affairs. *See generally, Williamson v. Lee Optical, Inc.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

No suspect classification or other basis for applying heightened scrutiny has been established, and it has not been shown that the classification used here bears no rational relation to a legitimate governmental purpose. *See San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973); *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); *Parks v. Watson,* 716 F.2d 646, 654 (9th Cir.1983).

There is a rational basis to distinguish between chiropractors and other health care providers in setting reasonable rates of reimbursement for their services. Each profession has its own distinctive qualifications and licensing requirements. The State of Oregon places special limitations on the licensing and practice of chiropractors. Or.Rev.Stat. §§ 684.010–684.990 (1983). In light of the differences between chiropractors and other health care providers in training, licensing, practice, and treatment, the Director had a rational basis for the classifications used. *See Aasum v. Good Samaritan Hospital,* 542 F.2d 792, 796 (9th Cir.1976). No equal protection violation was established.

The judgment of the district court is AFFIRMED.