D.A. RICKARDS, M.A. Custer, Paul V. Belkin and John S. Sleasman, Plaintiffs-Counterdefendants-Appellants,

v.

CANINE EYE REGISTRATION FOUNDATION, INC., Lawrence M. Trauner and Dolly B. Trauner, Defendants-Counterclaimants-Appellees.

No. 84–2185.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 1985.

Decided Feb. 27, 1986.

Joseph M. Alioto, Lawrence G. Papale, Alioto & Alioto, San Francisco, Cal., for plaintiffs-counterdefendants-appellants.

Forrest A. Hainline, III, Timothy A. Ngau, Swidler & Berlin, Washington, D.C., for defendants-counterclaimants-appellees.

Before MERRILL and GOODWIN, Circuit Judges and WILLIAMS, District Judge.**

GOODWIN, Circuit Judge.

D.A. Rickards, M.A. Custer, Paul V. Belkin and John S. Sleasman ("Rickards group") appeal from the grant of summary judgment in favor of Canine Eye Registration Foundation, Inc., Lawrence M. Trauner and Dolly B. Trauner, ("CERF") defendants and counterclaimants in this antitrust action. The district court granted summary judgment on the CERF counterclaim, which challenged the Rickards group's original action as a violation of the antitrust laws. We affirm.

## I. BACKGROUND

The dispute between these parties is before us for the second time. In *Rickards v. Canine Eye Registration Foundation, Inc.*, 704 F.2d 1449 (9th Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983) (*"Rickards I"*), the district court granted CERF's motion for summary judgment, and entered a directed verdict denying the Rickards group recovery in their antitrust action, and we affirmed. The district court stayed the CERF counterclaim pending the disposition of this first appeal.

The underlying facts of this dispute were discussed in *Rickards I* and need not be discussed at length here. *See id.* at 1451–52. CERF was established as a non-profit organization to collect and disseminate information concerning hereditary eye disease in dogs. It operated a registry listing certain breeds of purebred dogs. Only dogs examined by veterinarians certified by the American College of Veterinary Ophthalmologists ("ACVO") were permitted to be listed in the registry. The Rickards group were non-ACVO certified veterinarians, and thus were not permitted to perform the examinations required for CERF registration. This dispute centers on the efforts of the Rickards group either to be allowed to perform such examinations, or to drive CERF from the veterinary ophthalmology market. We turn briefly to the CERF counterclaim.

The counterclaim alleged that the Rickards group had violated sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2 (1982)), filed a vexatious complaint for an improper purpose, wrongfully interfered with CERF's present and prospective business relationships and had violated the California Cartwright Act and Unfair Trade Practices Act (Cal.Bus. & Prof.Code §§ 16,600, *et seq.*, 16,720 *et seq.*, and 17,000 *et seq.* (West 1964)).

Both the Rickards group and CERF filed cross-motions for summary judgment, and after the motions were fully briefed and argued, the magistrate, sitting as trial judge by stipulation of the parties, granted CERF's motion for summary judgment.

On March 1, 1984, the magistrate signed an order for partial final judgment and held that the Rickards group had (1) violated section 1 of the Sherman Act under both the rule of reason and per se standards; (2) violated Section 2 of the Sherman Act by engaging in a conspiracy to monopolize and an attempt to monopolize trade or commerce; and (3) brought a lawsuit which was baseless and a sham, and in furtherance of their overall scheme to violate the antitrust laws. The court awarded CERF $416,893.99 in damages, and trebled that amount pursuant to 15 U.S.C. § 15 (1982).

After the retirement of the magistrate who originally heard the case, it was assigned to another magistrate. The Rickards group's motion to alter or amend the March 1, 1984 judgment was denied on

** Honorable David W. Williams, Senior U.S. District Judge, for the United States District Court for the Central District of California, sitting by designation.

May 30, 1984 after further briefing and a hearing, and this timely appeal followed.

## II.  DISCUSSION

We review the grant of summary judgment de novo, and apply the same test as did the district court. *British Airways Board v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Thus, "[a]ll 'evidence and factual inferences' must be viewed in the light most favorable to the adverse party and the summary judgment may be upheld only if 'there are no genuine issues of material fact and [the movant is] entitled to judgment as a matter of law.'" *Alaska v. United States*, 754 F.2d 851, 853 (9th Cir.1985) (quoting *Martino v. Santa Clara Valley Water District*, 703 F.2d 1141, 1145 (9th Cir.), *cert. denied*, 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983)).

We note that while antitrust conspiracies do not ordinarily lend themselves to summary disposition, *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1050 (9th Cir.), *cert. denied*, 464 U.S. 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983), summary judgment is sometimes appropriate in antitrust cases. *Landmark Development Corp. v. Chambers Corp.*, 752 F.2d 369, 371–72 (9th Cir. 1985); *ALW, Inc. v. United Air Lines, Inc.*, 510 F.2d 52, 55 (9th Cir.1975). Furthermore, a judgment may be sustained on any ground supported by the record. *Fruehauf Corp. v. Royal Exchange Assurance of America*, 704 F.2d 1168, 1171 (9th Cir.1985).

The principal issue on appeal is whether the record supports summary judgment. The Rickards group contends that numerous fact questions required resolution by trial. They have failed, however, to identify, either in their briefs or at oral argument, any disputed material question of fact which was not answered by uncontradicted affidavits or other documentary evidence in the record.

### A.  Section 1 Violation

■ To establish a section 1 violation by the Rickard group, CERF had to prove three elements: (1) an agreement or conspiracy, (2) resulting in an unreasonable restraint of trade, and (3) causing "antitrust injury." *Gough v. Rossmoor Corp.*, 585 F.2d 381, 386 (9th Cir.1978), *cert. denied*, 440 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979). The record is replete with correspondence proving an agreement on the part of the Rickards group to drive CERF out of business. While the mere expression of anticompetitive intent is insufficient to establish a section 1 claim, the record establishes acts committed in furtherance of the conspiracy. The Rickard group's vexatious litigation clearly affected CERF's business or property in a negative way; and the injury was of the type cognizable under the antitrust laws.

#### 1.  *The Concerted Refusal to Deal.*

The record indicates that after the Rickards group had failed in its efforts to convince CERF to allow veterinarians lacking ACVO-certification to participate in the CERF program, they encouraged ACVO members to stop dealing with CERF. There is evidence that this boycott of CERF met with some success. The minutes of the July 18, 1978 Executive Board meeting of the American Society of Veterinary Ophthalmology ("ASVO"), the professional organization established by the Rickards group, state that "[t]he ACVO members present did indicate that they had cut all ties with CERF." The district court concluded that the Rickards group's concerted refusal to deal with CERF violated section 1 under both a per se and a rule of reason analysis. We hold that a per se analysis is inappropriate under these facts.

■ The per se rule governs only if the practice at issue "facially appears to be one that would always or almost always tend to restrict competition and decrease output." *National Collegiate Athletic Association v. Board of Regents of University of Oklahoma*, 468 U.S. 85, 104 S.Ct.

2948, 2960, 82 L.Ed.2d 70 (1984) (quoting *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1, 19–20, 99 S.Ct. 1551, 1562, 60 L.Ed.2d 1 (1979)). Some practices, such as horizontal price-fixing, are clearly subject to a per se analysis. *E.g., United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223, 60 S.Ct. 811, 844, 84 L.Ed. 1129 (1940). While there is some older case law suggesting that group boycotts are per se violations of section 1, *see, e.g., Klor's Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 212–13, 79 S.Ct. 705, 709–10, 3 L.Ed.2d 741 (1959); *Blanton v. Mobil Oil Corp.*, 721 F.2d 1207, 1211 (9th Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 1874, 85 L.Ed.2d 166 (1985), the Supreme Court's most recent pronouncement on concerted refusals to deal requires that we look to the type of boycott at issue to determine if per se condemnation is required. *Northwest Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co.,* —— U.S. ——, 105 S.Ct. 2613, 2619, 86 L.Ed.2d 202 (1985). Unless the challenged activity "falls into a category likely to have predominantly anticompetitive effects," the per se analysis of a concerted refusal to deal claim is overbroad. *Id.,* 105 S.Ct. at 2621. Anticompetitive effect is unlikely unless the boycotting party "possesses market power or exclusive access to an element essential to competition." *Id.* Nothing in the record suggests that the Rickards group possessed dominance in the veterinary ophthalmology market, or that it controlled an element essential to competition. On the contrary, it was CERF's growing position in veterinary ophthalmology that triggered the Rickards group's concerted action against it. Therefore, under *Northwest Wholesale Stationers,* the district court's application of a per se analysis to the Rickards group's boycott was premature.

■ The district court found in the alternative that the Rickards group's concerted action violated section 1 under the rule of reason. Under this analysis, the moving party must establish that the action unreasonably restrained competition. *See Jefferson Parish Hospital District v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 1567, 80 L.Ed.2d 2 (1984). CERF attempted to meet its burden by showing that it temporarily suspended its registration activities during the pendency of the Rickards group's antitrust suit against it. CERF subsequently re-entered the market. Nothing in the record indicates that the boycott was the cause of the suspension of its registration business. In fact, the record suggests that the lawsuit was the only cause. Further, CERF may have lost profits from the temporary disruption of its business but failed to assert the claim. Therefore, we cannot affirm the district court's finding that the Rickards group's urging of ACVO members not to deal with CERF of itself violated section 1.

■ Although we reject the district court's finding of section 1 liability for the concerted refusal to deal orchestrated by the Rickards group, the court nonetheless made a valid finding of section 1 liability. The district court awarded CERF $416,-893.99 in damages on its counterclaim.[1] This figure represents the amount spent by CERF in its defense against the antitrust suit filed against it by the Rickards group. Because a single lawsuit, when brought for anticompetitive purposes, may under certain circumstances constitute a violation of section 1, we affirm the district court's finding of liability on that basis. *See e.g., Omni Resource Development Corp. v. Conoco, Inc.*, 739 F.2d 1412, 1414 (9th Cir. 1984) (single suit may constitute antitrust violation when coupled with anticompetitive conduct external to the suit).

### 2. *The Noerr-Pennington Doctrine.*

■ Under the *Noerr-Pennington* doctrine, the petitioning of government is immune from antitrust liability. *See Eastern Railroad Presidents Conference v.*

---

**1.** The figure was then trebled under 15 U.S.C. § 15 (1982) *and attorney's fees for the prosecution of the counterclaim were added.*

*Noerr*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). Although the doctrine as initially developed protected the petitioning of the legislative and executive branches, it was later extended to immunize from antitrust liability those who seek redress in the courts. *See California Transport v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 611–12, 30 L.Ed.2d 642 (1971). The *Noerr-Pennington* immunity is not, however, absolute. Immunity is not afforded to those who resort to sham or unfounded litigation solely for anticompetitive purposes. *Omni Resource Development Corp. v. Conoco, Inc.*, 739 F.2d 1412, 1413 (9th Cir.1984). The Supreme Court has applied the sham exception when a meritless lawsuit is one of a pattern of baseless and repeated claims. *Otter Tail Power Co. v. United States*, 410 U.S. 366, 380, 93 S.Ct. 1022, 1031, 35 L.Ed.2d 359 (1973). This circuit has held that a single meritless suit may also be sufficient to forfend the *Noerr-Pennington* immunity. *Omni Resource*, 739 F.2d at 1414; *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1257 (9th Cir. 1982), *cert. denied*, 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 768 (1983). Our cases require, however, that the sham lawsuit be accompanied by additional evidence of anticompetitive activity before immunity will be called off. We stated in *Omni:*

> When the antitrust plaintiff challenges one suit and not a pattern, a finding of sham requires not only that the suit is baseless, but also that it has other characteristics of grave abuse, such as being coupled with actions or effects external to the suit that are themselves anti-competitive.... 739 F.2d at 1414.

■ In this case we have a baseless lawsuit coupled with the evidence of a concerted refusal to deal which the trial court found sufficient, alone, to support liability. Although there is no evidence that the attempted boycott itself caused any cognizable antitrust injury, it provides sufficient corroboration of the Rickards group's anticompetitive motivation to warrant the application of the sham exception to *Noerr-Pennington.*

The application of the sham exception to single lawsuits may have a chilling effect on those who in good faith seek redress in the courts. The threat of treble damages may discourage the filing of meritorious claims, or preclude plaintiffs from asserting novel or cutting-edge theories of liability. Thus, we must apply the sham exception with caution. The uncontradicted record in this case, however, shows that the Rickards group filed their action against CERF not because of a good faith belief that CERF had violated the antitrust laws, but as part of a concerted plan to force CERF out of the veterinary ophthalmology market. This kind of litigation deserves all the chilling effect the law allows. Further, the filing of suit was not the only overt act committed in furtherance of the conspiracy. The Rickards group sought to deprive CERF of the services of ACVO-certified veterinary ophthalmologists for its registration program. While the boycott, standing alone, did not support section 1 liability, its evidentiary value in explaining the lawsuit could not be ignored. The trial judge's finding of sham litigation on the paper record before him was the kind of inference drawing protected by Rule 52(a). *Anderson v. City of Bessemer City*, —— U.S. ——, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985).

### 3. *Antitrust Injury.*

■ CERF's sole damage claim is that of the costs incurred in defense against the baseless suit filed against it. Despite the application of the sham exception to *Noerr-Pennington*, CERF is not entitled to recover merely because its litigation costs were incurred as a result of the Rickards group's violation of section 1 of the Sherman Act. In order to recover, CERF must prove that the injury was "of the type the antitrust laws were intended to prevent." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697–98, 50 L.Ed.2d 701 (1977). We have held that the costs incurred in the defense of a suit filed

in violation of the antitrust laws constitute antitrust injury as defined in *Brunswick. Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 997 (9th Cir.1979) (*"Handgards I"*), cert. denied, 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980). After our decision in *Handgards I*, the Supreme Court construed *Brunswick* to require that the injury alleged in an antitrust suit be "of the type that the antitrust statute was intended to forestall." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 540, 103 S.Ct. 897, 909, 74 L.Ed.2d 723 (1983). Because CERF has an adequate state law tort remedy for the Rickards group's abuse of process, we question whether the injury at issue is of the type that Congress sought to redress in enacting the Sherman Act. This Court has specifically held, however, that the principles of antitrust standing set forth in *Associated General Contractors* did not affect our holding in *Handgards I* that the costs of litigating a frivolous suit are cognizable under the antitrust laws. *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1297 (9th Cir.1984) (*"Handgards II"*), cert. denied, —— U.S. ——, 105 S.Ct. 963, 83 L.Ed.2d 968 (1985).

We hold that because the *Noerr-Pennington* immunity does not apply and because CERF claims damages that are treated as antitrust injury in this circuit, summary judgment for counterclaimants on their section 1 claim was proper.

### B. Section 2 Violation

■ To establish a section 2 attempt to monopolize violation, CERF had to prove four elements: "(1) specific intent to control prices or destroy competition in some part of commerce; (2) predatory or anticompetitive conduct directed toward accomplishing that purpose; (3) a dangerous probability of success; and (4) causal antitrust injury." *Rickards I*, 704 F.2d at 1455.

The record contains proof of specific predatory intent and anticompetitive conduct. The evidence shows that the Rickards group intended to keep lay persons from running a registry and that they employed threats of litigation to give effect to this intent. The Rickards group now contends that even if they made the purported threats, these threats do not support section 2 liability because there is no proof that the Rickards had or approached monopoly power. We agree.

■ The "dangerous probability of success" element may under some circumstances be inferred from direct evidence of specific intent coupled with anticompetitive conduct. *See William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 668 F.2d 1014, 1029 (9th Cir.1981), cert. denied, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). When, however, there is no proof of market dominance, the conduct supporting an inference of specific intent to monopolize must be "of a kind clearly threatening to competition or clearly exclusionary." *Forro Precision, Inc. v. International Business Machines Corp.*, 673 F.2d 1045, 1059 (9th Cir.1982), cert. denied, —— U.S. ——, 105 S.Ct. 2664, 86 L.Ed.2d 280 (1985). CERF has made no such showing. It has shown only that the Rickards group through its filing of a sham lawsuit inflicted costs upon it that are recoverable under *Handgards I*. It has demonstrated no serious threat to competition in the veterinary ophthalmology market. CERF's own re-entry into that market after the grant of summary judgment in its favor in *Rickards I* cuts against any such finding.

■ In *Forro Precision*, this court found "implausible" the inference of specific intent to monopolize the worldwide market for electronic data processing products and services from the discreet harm inflicted by IBM against one vendor of IBM-compatible equipment. 673 F.2d at 1061–62. CERF asks us to draw an equally implausible inference. It defines the relevant product market as "veterinary services in general." The claim that the Rickards group, through an attempted boycott of CERF and the filing of a single lawsuit, was attempting to monopolize the nationwide market for all veterinary services is, at best, im-

plausible. Therefore, we hold that the summary judgment in favor of CERF on its section 2 claim was unsupported by the record. Because the damages awarded resulted from the section 1 violation, the magistrate's damage award need not be adjusted despite the lack of section 2 liability.

### C. The Damages

■ Appellants challenge the calculation of damages, asserting that CERF has (1) claimed costs as well as attorney's fees as compensable damages, and (2) failed to allocate and remove from its damage claim the attorney's fees charged in prosecution of the counterclaim.

We may reverse the district court's finding of damages only if it was "clearly erroneous," Fed.R.Civ.P. 52(a), and we must be convinced that a "mistake has been committed." *Reid Brothers Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1299 (9th Cir.1983) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)), *cert. denied*, 104 S.Ct. 279 (1983). No error was committed here.

The cost of defending itself in the first lawsuit through its several appeals is an injury that CERF would not have suffered but for the Rickards group's suit against it. The prevailing party need only provide some basis for a reasonable estimate of damages, *D & S Redi-Mix v. Sierra Redi-Mix and Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir.1982), and CERF has supported its antitrust damage claim for the wrongful infliction of the costs of this litigation. The district court's damage award was not clearly erroneous.

### D. Validity of the Judgment

■ Finally, appellants assert that the magistrate did not sign the original judgment until March 2, 1984, one day after he had retired, and the judgment is thus void. This contention is not supported by the record. The judgment which appellants challenge is dated March 1, 1984. In addition, CERF explains that appellants' confusion arose due to the fact that the letter with the judgment was misdated because of leap year. We presume that judgments by a court of competent jurisdiction are regular and correct. *Kalb v. Feuerstein*, 308 U.S. 433, 438, 60 S.Ct. 343, 345–46, 84 L.Ed. 370 (1940). The presumption is not rebutted in this case. The judgment is valid.

AFFIRMED.

MERRILL, Circuit Judge:

I dissent.

I cannot agree that as a matter of law the suit brought by the Rickards group was sham and that for that reason, as a matter of law, the *Noerr-Pennington* doctrine does not provide immunity from antitrust liability.

The district court made no factual findings on the issue; it simply held that the lawsuit was "baseless and a sham." As backing for the conclusion that it was, the majority opinion cites only the concerted refusal to deal which showed the group's "anticompetitive motivation." But the desire to harm a competitor does not make a lawsuit a sham. Many antitrust suits have the goal of discomfiting competitors.

Rather, the relevant inquiry is whether the Rickards group intended to prevail and had some reasonable expectation that it might prevail. This is true even if the group intended to "destroy" CERF. "Genuine efforts to induce governmental action are shielded by *Noerr* even if their express and sole purpose is to stifle or eliminate competition." *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1254 (9th Cir.1982), *cert. denied*, 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983). The issue is whether the underlying action was commenced "without regard to merit or possible success ... [and] without any intent to induce favorable action" by the government. *Id.*

Here, the Rickards group knew that CERF's own law firm had warned CERF about possible antitrust problems. The Federal Trade Commission had expressed interest in looking at CERF's exclusionary

policies. The group members themselves testified at trial that they had believed CERF's practices to be illegal. A repetitive series of losing lawsuits would present a different case. Here we are faced with a single lawsuit. Further, it was one that the Rickards group saw fit to present to this court on appeal and after losing here to the Supreme Court on petition for certiorari. The case before this court required a substantial published opinion of 6 pages with 18 headnotes. *Rickards v. Canine Eye Registration Foundation, Inc.,* 704 F.2d 1449 (9th Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983). This does not look sham to me.