## ASSIGNED CONTAINER SHIP CLAIMS, INC., a California corporation, Plaintiff-Appellant,

v.

## AMERICAN PRESIDENT LINES, LTD., a corporation; Sea-Land Service, Inc., a corporation; United States Lines, Inc., a corporation, Defendants-Appellees.

No. 85–1978.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 1986.

Decided March 18, 1986.

Joseph M. Alioto, Lawrence John Appel, Alioto & Alioto, San Francisco, Cal., for plaintiff-appellant.

J. Thomas Rosch, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendants-appellees.

Before GOODWIN, HUG, and REINHARDT, Circuit Judges.

HUG, Circuit Judge:

This case involves an interpretation of the *Noerr-Pennington* bar to antitrust liability. Assigned Container Ship Claims, Inc. ("Assigned") purchased an antitrust claim from the bankruptcy trustee of the Pacific Far East Lines, Inc. ("PFEL"). Thereafter, in April 1982, Assigned filed

suit against American President Lines, Ltd. ("APL"), Sea-Land Service, Inc. ("Sea-Land"), and United States Lines, Inc. ("U.S. Lines"), alleging that defendants had conspired to prevent Lykes Brothers Steamship Company ("Lykes") from bidding on three PFEL containerships by petitioning the Federal Maritime Administration ("MARAD") to limit Lykes's authority to conduct subsidized containership operations in the Pacific. Assigned claimed that this conduct violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 (1982). The original complaint was dismissed for failure to state a claim upon which relief could be granted on the ground that, as pleaded, it was barred by the *Noerr-Pennington* doctrine.

Assigned amended its complaint, alleging two distinct conspiracies. The first conspiracy was identical to the one alleged in the original complaint, except for an additional allegation that defendants conspired to file a "sham" petition with MARAD, which brought into play an exception to the *Noerr-Pennington* bar. The second conspiracy pertained to an agreement among defendants themselves that neither Sea-Land nor U.S. Lines would bid against APL at the bankruptcy auction of PFEL's container vessels. The amended complaint realleged, among other things, that the two conspiracies violated Sections 1 and 2 of the Sherman Act,[1] 15 U.S.C. §§ 1, 2.

Defendants filed for summary judgment on March 30, 1984. The district court granted the motion on the ground the *Noerr-Pennington* doctrine precludes antitrust liability. This appeal followed. The sole issue is whether the *Noerr-Pennington* doctrine shields defendants' MARAD petition from antitrust liability.[2] We have jurisdiction under 28 U.S.C. §§ 1291 and 1294(1) (1982) and affirm the district court's entry of summary judgment.

A grant of summary judgment is reviewed *de novo*. *Lojek v. Thomas*, 716 F.2d 675, 677 (9th Cir.1983). The reviewing court must determine whether there is any genuine issue of material fact and whether the substantive law was correctly applied. *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir.1982), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). The burden of demonstrating the absence of an issue of material fact lies with the moving party. *Id.* If a defendant can present probative evidence that rebuts plaintiff's allegations of conspiracy, the plaintiff must then come forward with specific factual support for its allegations of conspiracy, or summary judgment for the defendant is appropriate. *ALW, Inc. v. United Air Lines, Inc.*, 510 F.2d 52, 55 (9th Cir.1975). Plaintiff must rebut the defendant's showing by presenting " 'significant probative evidence tending to support the complaint.' " *General Business Systems v. North American Philips Corp.*, 699 F.2d 965, 971 (9th Cir.1983) (quoting *First National Bank v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1595, 20 L.Ed.2d 569 (1968)).

A trilogy of Supreme Court cases has established an exemption from the antitrust laws for group solicitation of government action. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11, 92 S.Ct. 609, 611–12, 30 L.Ed.2d 642 (1972); *United Mine Workers v. Pennington*, 381 U.S. 657, 669–71, 85 S.Ct. 1585, 1592–94, 14 L.Ed.2d 626 (1965); *Eastern Railroad President's Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137–38, 81 S.Ct. 523, 529–30, 5 L.Ed.2d 464 (1961). These cases, in essence, distinguish

1. Assigned does not contest that a summary judgment for defendants on the antitrust counts requires a grant of summary judgment for defendants on the remaining counts as well.

2. The district court granted summary judgment in defendants' favor on the bid-rigging claim as well. Assigned did not raise the propriety of that ruling as an issue either in its "Issue Presented for Review," in its "Argument," or at oral argument, nor did it challenge that ruling by the district court in its "Motion to Reconsider." Therefore, whether summary judgment was properly granted on Assigned's claim that Sea-Land and U.S. Lines agreed not to bid against APL for the three PFEL ships is not an issue on appeal. *See International Union of Bricklayers Local 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir.1985).

governmental from private action and place the importance of the Constitution's fifth amendment guarantee of a right to petition the Government above the Sherman Act's condemnation of monopolies and combinations in unreasonable restraint of trade. The doctrine fashioned in those cases "shields from the Sherman Act a concerted effort to influence public officials regardless of intent or purpose," *Pennington*, 381 U.S. at 670, 85 S.Ct. at 1593, unless the petition authority is a "sham." *California Motor Transport*, 404 U.S. at 515–16, 92 S.Ct. at 614. In this circuit, a "sham petition" has been defined as a petition "undertaken solely to interfere with free competition and without the legitimate expectation that such efforts will in fact induce lawful government action." *Omni Resource Development Corp. v. Conoco, Inc.*, 739 F.2d 1412, 1413 (9th Cir.1984).

In this case, Assigned claims that the three defendants conspired to file a sham petition with MARAD for the purpose of preventing Lykes from bidding on the three PFEL containerships. More specifically, the controversy involves two MARAD Subsidy Board decisions in December 1978 and January 1979. On December 8, 1978, MARAD's Subsidy Board awarded Lykes a renewed long-term (twenty-year) operational differential subsidy contract. At that time, Lykes provided no West Coast-Pacific service on Pacific Trade Routes 17 and 29. The only companies providing *containership* service on Trade Routes 17 and 29 were defendants APL, U.S. Lines, and Sea-Land. Shortly after the December 8 subsidy award, Lykes acquired three RO/RO ships (ships from which cargo can be rolled on and off), which were previously owned and operated by States Steamship Company ("States"). These vessels were authorized by MARAD to provide up to ninety-five subsidized sailings on Trade Routes 17 and 29. Because of this purchase, Lykes gained access to important Pacific trade routes.

On January 2, 1979, MARAD issued a letter to Lykes confirming the renewal of Lykes's long-term differential subsidy contract for twenty years and containing, as "Part M," an addendum setting forth certain understandings between MARAD and Lykes respecting Lykes's acquisition of States's RO/RO ships (hereinafter "January 2 Addendum"). The January 2 Addendum provided, among other things, that for the twenty-year period covered by Lykes's subsidy contract, (1) Lykes was authorized to perform subsidized service on Trade Routes 17 and 29 with the three RO/RO ships and up to six conventional ships from the Lykes fleet and, in addition, (2) "interchange (substitution) and transfer privileges" would be granted to all Lykes's vessels between all services. The January 2 Addendum thus allowed Lykes to change the type of service on Trade Routes 17 and 29 by substituting containerships for the RO/RO and conventional ships during the twenty-year period.

Section 605(c) of the Merchant Marine Act of 1936 ("Act"), 46 U.S.C. § 1175(c) (1982), prohibits the Federal Government from subsidizing any United States flag ocean carrier service "which would be in addition to existing service" without giving notice and an opportunity for a prior hearing of all interested parties concerning (1) whether the existing flag service is adequate, and (2) whether the additional service would further the purposes of the Act. Section 605(c) has been interpreted to require notice and an opportunity for a hearing in circumstances very similar to those involved here. The D.C. Circuit in *Sea-Land Service, Inc. v. Connor*, 418 F.2d 1142, 1148 (D.C.Cir.1969), held that the notice and hearing requirements of section 605(c) applied when the carrier made application to change from conventional breakbulk service to containership service. MARAD has subsequently required notice and hearing under section 605(c) in such circumstances. *Delta Steamship Lines, Inc.*, 22 Shipping Regulations Reporter (P & F) 226, 231 (MSB 1983); *Prudential Lines, Inc.*, 17 Shipping Regulations Reporter (P & F) 1471, 1496 (MSB 1977).

On January 12, 1979, APL filed a petition for reopening of the January 2 Addendum for purposes of reconsideration. In that

petition, APL asked MARAD's Subsidy Board to "reconsider its 'understanding' with Lykes." APL pointed out that the understanding described in the January 2 Addendum left Lykes free, for a period of twenty years, to change the type of service that States had provided on the two Pacific trade routes by substituting containerships for the RO/RO and conventional vessels used by States and Lykes, without giving interested parties prior notice and an opportunity to be heard as required by section 605(c). APL, therefore, requested that MARAD advise Lykes either (1) that the understanding as it then stood was rescinded as unlawful, or (2) that the understanding would be implemented only after section 605(c) procedures were followed and Lykes had accepted the same subsidy and other funding terms required by other subsidized operators. U.S. Lines filed a petition similar to APL's on January 15, 1979, and Sea-Land informed MARAD and interested parties that it reserved the right to file a petition unless the relief sought by APL and U.S. Lines was granted.

Lykes's president and chief executive spoke with APL's president and its executive vice president and agreed, subject to MARAD approval, to modify the January 2 Addendum to provide for notice and a hearing if, in the future, Lykes decided to put full containerships into service on States's Pacific trade routes. After review and revision by counsel for APL and Lykes, and then by counsel for Sea-Land and U.S. Lines—the other parties entitled to notice—the proposed amendment was submitted to MARAD for its approval. The proposed amendment provided, in pertinent part, that "Lykes shall not enter containerships into service on Trade Route 29 or Trade Route 17 (Pacific), whether directly or as top-offs, nor be required to replace existing vessels with containerships for such service, without prior notice and opportunity for hearing under Section 605(c) of the Act." APL and U.S. Lines withdrew their petitions contingent upon the adoption by MARAD of the amendment.

Assigned argues that this petitioning process improperly removed Lykes as a potential bidder of PFEL's three containerships. However, APL's and U.S. Lines's petitions to MARAD are clearly within the purview of the *Noerr-Pennington* doctrine. In petitioning MARAD to rescind the January 2 Addendum in that form or, alternatively, to read into the agreement the notice and opportunity to be heard requirements of section 605(c), petitioners were simply asking MARAD and Lykes to comply with the law. Under these circumstances, absent a showing that the petition was a "sham," petitioning MARAD was immune from antitrust liability.

As stated earlier, a "sham petition" has been defined as a petition "undertaken solely to interfere with free competition and without the legitimate expectation that such efforts will in fact induce lawful government action." *Omni*, 739 F.2d at 1413. In this case, Assigned claims that the MARAD petitions were not filed in a genuine effort to influence governmental action since section 605(c) bars a subsidy award only if the service currently provided by United States flag vessels is inadequate, and that APL knew that existing service was inadequate because it had pending an application to MARAD for twenty-six additional sailings.

Whether Trans-Pacific United States flag containership service was adequate, even in 1978, was unresolved when the petitions were filed in January 1979. APL claimed that the service was inadequate in connection with its application in 1978 for twenty-six additional subsidized sailings. After APL applied to MARAD in 1978, section 605(c) notice was given. APL's alleged co-conspirators, U.S. Lines and Sea-Land, objected to APL's application, taking the position that the service was adequate without the twenty-six sailings APL sought. A hearing was held, but at the time defendants petitioned MARAD regarding the January 2 Addendum, MARAD had not made a decision on APL's request.

Moreover, even if MARAD had decided that Trans-Pacific service was inadequate in 1978, that clearly would not have re-

solved the issue created by the proposed January 2 Addendum. The addendum purported to leave Lykes free to substitute containerships for conventional vessels without section 605(c) notice and opportunity for hearing any time within the next twenty years. Since Lykes had an open-ended conversion privilege that would last twenty years, the issue of whether existing United States flag containership service was adequate or not could vary substantially over the life of the agreement, irrespective of APL's current application. Furthermore, APL was asking only that Lykes be required to comply with the same procedures with which APL currently was being required by law to comply. The sham exception, therefore, does not apply to the facts of this case, and the *Noerr-Pennington* doctrine precludes antitrust liability.

AFFIRMED.